REYNOLDS *against* REYNOLDS :

| 15 | 83 |
|----|-----|
| 68 | 122 |

### IN ERROR.

On a petition brought by *A* to the county court, for a private way from his close *white-acre* to his close *black-acre*, over the land of *B*, it appeared, that *A* had formerly applied to the select-men for a way from *white-acre* through *B's* land, to the highway lying *Easterly* thereof, which the select-men agreed to lay out and proceeded to do so; that when they had laid out such way in part only, they, at the request of *A*, forbore to proceed further, in consequence of which this way never became legally established; that if it had been laid out and established, it would have enabled *A* to occupy *white-acre,* and would, by its connexion with the highway, have furnished him a continuous way from his dwelling-house to *white-acre;* that *A* afterwards purchased *black-acre,* and applied to the select-men for the way prayed for in this petition; that the select-men thereupon offered to lay out the way which they had previously agreed to lay out and had laid out in part, but refused to lay out the way prayed for in this petition: it was held, that the first application of *A* to the select-men and the proceeding thereon, did not preclude him from a subsequent application to them for the way prayed for in this petition; and

HARVARD LAW LIBRARY

that the select-men having refused to lay out the last-mentioned way, this petition to the county court was properly brought.

If it appear from the record, that a private way laid out by a committee appointed by the county court, is *necessary*, a decree establishing such way, will not be deemed erroneous, because it also appears, that such way is not strictly and absolutely necessary, but convenient only, in order to enable the petitioner to have access to his land.

*Qu.* Whether a higher degree of necessity is requisite to authorize the laying-out of a private, than of a public, way.

It is exclusively the province of the county court, with the aid of its committee, to infer and find the necessity of the way from the circumstances proved.

To authorize the laying-out of a private way, it is not necessary that it should be connected with a highway, so as to accommodate the public, as well as the petitioner; but it may be laid out where its only use is to give the petitioner access to one parcel of his land, by connecting it with another.

*Qu.* Whether it is within the constitutional power of the legislature to authorize the laying-out of a way, for the sole use of a particular individual, over the land of another.

On a writ of error, this court will not consider an objection to the judgment or decree complained of, which is not particularly pointed out and set forth in the assignment of errors.

It is no objection to the appointment of a committee to lay out a private way, that a committee had been previously appointed, on the same petition, and had made a report, which had been set aside.

Where the report of a committee laying out a private way, described the way as thirty links wide, on a line running through the centre thereof, beginning at a certain bar-way on the *South* line of one of the petitioner's tracts, giving minutely the courses and distances, and designating the land of each of the respondents on which the course runs; stating further, that the first course runs on the *East* side of a wall separating a plough field from a pasture; that the second runs to the *North* line of the respondent, *C;* that the third runs on the *East* side of a wall separating the lands of *C;* and that the line terminates at the foot of a ledge on the *North* side of another tract of the petitioner's land; it was held, that the *termini* and course of such line were described with sufficient certainty.

It is not necessary, if proper, for the committee laying out a private way, to direct, in their report, what particular kind of fences the petitioner shall build in the places designated for that purpose; since the law furnishes a sufficient guide on the subject.

Where the decree of the court establishing a private way, declared, that such way should be and forever remain a private way, for the use and benefit of the petitioner, his heirs and assigns, in conformity with the prayer of the petition; it was held, that such decree was not erroneous on the ground that it vested in the petitioner a title to the way, which might out-last his title to the land for the accommodation of which it was laid out; nor because the continuance of the way was not expressly limited to the necessity which required it.

Where the decree of the court establishing a private way, did not direct when such way should be opened and the damages assessed be paid; it was held, that in this respect, the decree was erroneous.

Where all the proceedings in the laying-out and establishment of a private

way, were regular and correct, except an omission of the decree to direct when the way should be opened and the damages assessed be paid; it was held, on a writ of error, that the judgment should not be reversed *in toto*, but only as to this erroneous portion of it; and that the cause should be remanded to the county court, there to be proceeded with according to law.

*Fairfield,*
June, 1842.

Reynolds
*v.*
Reynolds.

THIS was an application to the county court, by *Ard Reynolds* against *Ezekiel Reynolds* and *Edmond Lockwood*, for a private way.

The petition stated, that the petitioner owned in fee simple a tract of land in *Greenwich*, containing about twenty-five acres, bounded *North* in part by *Edmond Lockwood* and in part by *Ezekiel Reynolds, East* by *Edmond Lockwood, South* by *Edmond Lockwood,* jr., and *West* by *Ira Lockwood;* that the petitioner had no mode of getting to said land from his dwelling-house but by passing over the lands of said *Edmond Lockwood* and *Ezekiel Reynolds*, over which he had no legal right to pass, and consequently, was liable to be deprived of the use and improvement of his said lot: that the petitioner also owned in fee another tract of land, containing about seventy acres, lying near his dwelling-house, bounded *North* and *East* by a highway; that a way could very conveniently be made from the last-mentioned tract to said twenty-five acre lot, by which the petitioner might have convenient access thereto; that said way, if laid out, would run about forty rods on land of said *Ezekiel Reynolds*, and about twenty-three rods on land of said *Edmond Lockwood;* that said way, if so laid out, would do very little injury to said *Lockwood* or *Reynolds*, but would be of great necessity and convenience to the petitioner: that he had applied to said *Lockwood* and *Reynolds* to purchase of them a right of way over their said lands, and offered them a liberal compensation therefor, but they refused to sell the same: that he had previously applied to the select-men of the town of *Greenwich* to lay out said way, at his expense, but they refused to lay out said way, and the petitioner had no remedy but by this application to the county court.

This petition was duly served and returned to the county court, holden at *Danbury*, in *August*, 1839. The respondent, *Lockwood*, was defaulted. *Reynolds* appeared, and made defence. The court, after a hearing, found, that the petitioner, on the 1st of *January*, 1839, applied to the select-men

of the town of *Greenwich* to lay out said way ; and that they then refused, and have ever since refused, to lay it out ; and having adjudged that the objections against the laying-out of said way were insufficient, appointed three dis interested free-holders, to inquire into the necessity of said way, and if they should be of opinion that the same was necessary, to survey and lay out the same, and assess the damages thereby accruing to the respondents, and make return of their doings to the court, at its next term.    This committee made their report to the term of the court in *January,* 1840, laying out the way prayed for in the petition ; which report was, on the remonstrance of the respondent *Reynolds,* set aside, by the court.    The respondent thereupon objected to the appointment of another committee ; but the court appointed another committee, who made their report to the court, at its term held in *August,* 1840, stating, that having given due notice to the parties of the time and place of meeting, on the business of their appointment, and having fully inquired into the facts stated in the petition, having viewed the premises and the contemplated way, and having fully heard the parties, with their evidence, they found, that a private way, leading from a point at a new bar-way, on the *South* line of said seventy acre tract, and running *Southerly* over the lands of said *Edmond Lockwood* and *Ezekiel Reynolds* to a point at the foot of a rocky slope, on the *North* line of said twenty-five acre tract, is necessary, and ought to be laid out and established, at the expense of the petitioner, being the way prayed for in the petition.

The committee thereupon proceeded to survey and lay out said private way, thirty links wide, on the following line running through the centre of said way, *viz.* " beginning at the bar-way on the *South* side of said seventy acre tract, and running over the lands of said *Ezekiel Reynolds,* on the *East* side of a stone-wall separating a plough field from a clover pasture, *South* 16½ degrees *West,* 3 chains, 10 links, to the *South* line of said clover pasture ; thence, on said land of said *Ezekiel Reynolds, South* 25½ degrees *West,* 2 chains, 19 links, to the *North* line of the land of said *Edmond Lockwood ;* thence, on the land of said *Edmond Lockwood,* along the *East* side of a wall separating the lands of said *Ezekiel Reynolds* and said *Edmond Lockwood, South* 12 de-

grees *West*, 5 chains, 86 links, to the land of said *Ezekiel Reynolds;* thence, through and over the land of said *Ezekiel Reynolds, South* $8\frac{1}{2}$ degrees *West*, 4 chains, to the *North* line of the land of said *Ard Reynolds*, at the foot of said rocky slope." The committee made it the duty of the petitioner to erect and maintain the necessary fences upon and along the way so laid out, except that he was to leave an open space sixty links in width across said way, upon *Ezekiel Reynold's* land, next adjoining the *North* line of said *Lockwood's* land, for the convenience of said *Ezekiel Reynolds* to pass and repass, with his cattle &c.; which space so left was always to remain open, unless said *Ezekiel Reynolds* should choose to fence the same. The committee also made it the duty of the petitioner to erect and maintain sufficient fences or bars across said way, and on each side of the space so left for the convenience of said *Ezekiel Reynolds :* also, that the petitioner should erect and maintain a sufficient fence or bars, on the *South* line of said *Lockwood's* land, separating his land from said *Ezekiel Reynold's* land : also, that the petitioner should erect and keep up a convenient pair of bars, on each side of said way and opposite to each other, on the *South* tract of said *Ezekiel Reynolds*, and within four rods of the *South* line of said *Lockwood's* land, for the convenience of said *Ezekiel Reynolds* to pass and repass across said way. The committee finally assessed the damages done to individuals over whose land said way passed, as follows, *viz.* to *Ezekiel Reynolds*, 80 dollars, [afterwards increased, by agreement of the parties, to 100 dollars ;] to *Edmond Lockwood*, 20 dollars.

To the acceptance of the report of the committee, the respondent filed a remonstrance, stating six grounds for setting it aside, one of which only, *viz.* the fifth, was found true. The facts therein stated were substantially as follows :—The petitioner, for twenty years before the date of his petition, had owned the tract therein described of twenty-five acres; but at the date of his petition, he had recently purchased the seventy acre tract. Before he bought the latter tract, and while he owned the other, he called upon the select-men of *Greenwich*, to lay out, for his use, a way to the twenty-five acre tract, from the highway lying *East* thereof, through land of said *Ezekiel Reynolds* and of said *Edmond Lockwood ;* which highway runs by the dwelling-house of the petitioner.

*Fairfield,*
June, 1842.

Reynolds
*v.*
Reynolds.

On this application, the select-men proceeded to lay out said way, for a short space, through a lane, on land of said *Ezekiel Reynolds;* thence for a short distance, over land of said *Edmond Lockwood;* thence over land of said *Ezekiel Reynolds,* to said twenty-five acre tract. After they had designated said way, by surveying it and marking it out, they determined, and offered to the petitioner, to lay it out and establish it according to law, for him to pass and repass to and from said highway, to and from the twenty-five acre tract, and to have it recorded. But the petitioner then and there requested the select-men not to lay out said way, except that part thereof so laid out through said lane, which he requested them to lay out and establish for his use, and have it recorded. The committee, at his request, did accordingly lay it out and establish it, and have it recorded for his use; which was done more than a year before the bringing of this petition. And they, at his request, forbore to complete the laying-out of the remainder of said way. The way which the select-men, at that time, offered to lay out for his use, would, by its connexion with the highway, have furnished the petitioner with a continuous way to and from his dwelling-house to and from the twenty-five acre tract. Further, when the plaintiff called on the select-men to lay out the way sought for in his petition, they did, after viewing the ground, offer to the petitioner to lay out for his use the same way, which the select-men so offered to lay out, but forbore, at his request, to lay out; but the petitioner refused to have them lay out for him any way other than that prayed for, in this petition. The seventy acre tract, lies, for more than a quarter of a mile, adjoining the highway which so runs by the petitioner's dwelling-house; and the way prayed for, is not at all needed, and never can be needed, by the petitioner, for access to the seventy acre tract. (*a*)

The court adjudged the reasons stated in this part of the remonstrance insufficient; and that the report of the committee laying out said way, ought to be accepted. It was thereupon ordered and decreed, that, upon the payment of 100 dollars, by the petitioner, to said *Ezekiel Reynolds,* and

─────────
(*a*) The same facts (or facts substantially the same,) were more fully stated in a bill of exceptions, which is omitted, to avoid prolixity.

of 20 dollars to said *Edmond Lockwood*, being damages as-
sessed to them respectively, by said committee, said way, so
laid out by said committee, should be and forever remain a
private way for the use and benefit of the petitioner, his heirs
and assigns, in conformity to the prayer of the petitioner,
subject nevertheless to the conditions and restrictions, im-
posed on the petitioner, by said committee.

*Fairfield,*
June, 1842.

Reynolds
*v.*
Reynolds.

The respondent brought a writ of error in the superior
court, assigning the following grounds of error: 1. That the
decree of the county court ought to have been in favour of
the respondent and against the petitioner : 2. That the county
court, after the rejection of the first report, could not legally
appoint, contrary to the objection of the respondent, another
committee, and accept their report : 3. That there was error
in each and every decree and order of the county court in
the cause, and in the final judgment of said court, establish-
ing a way for the petitioner, his heirs and assigns, uncondi-
tionally, except upon payment, as in said decree specified :
4. That neither in the report nor in the decree, is any time
fixed for the opening of said way, nor the payment of the
money to said *Ezekiel Reynolds ;* nor is there any decree
that said money should be paid : 5. That the finding of the
court is contradictory to the report of the committee : 6. That
neither by the report, nor by the decree, are the fences to be
built by the petitioner at all specified.

The case was reserved for the advice of this court.

*Hawley,* for the plaintiff in error, contended, 1. That the
facts set forth in the bill of exceptions and remonstrance and
found by the court, shew that its proceedings were erroneous.
The select-men had never refused or neglected to lay out a
way. On the contrary, they had offered the petitioner a
way, which would have given him access to his land. He
refused it, and now stands on the same ground as if it had
been laid out pursuant to his application.

2. That the statute, if it applies at all, applies only where
there is *no* way,—where a way is strictly *necessary.* In this
respect, there is a distinction between private ways and pub-
lic ways ; which latter are to be laid out where they are of
" common convenience and necessity." *Stat.* 269. *tit.* 48. *s.*
12. 14.

3. That the rights of individuals are subservient (compensation being made) to the convenience of the *public ;* but no individual's property may be taken or impaired for the mere convenience of another individual.    The legislature has no right to take or impair private property for *private* purposes. 2 *Kent's Com.* 339. 340.

4. That the statute relates, not to drift ways—such ways as that prayed for—such as merely connect two tracts—but to a different kind of ways—open ways, chiefly important to individuals, such as the public may use as occasion may require.    See sections 11. 12. 13. 14. 16. of the statute before referred to.    See also the statute of 1822, authorizing the erection of gates and bars on private ways, and empowering towns to expend part of the money raised by taxes for making and repairing *public* highways, on private ways.    *Stat.* 345. (ed. 1838.)

5. That there is no necessity for such a provision as that contained in the general statute, in relation to *drift* ways, and ways of that character; as the common law will give or reserve a way of necessity, where none is expressly granted or reserved.    1 *Sw. Dig.* 105.    *Collins* v. *Prentice,* 15 *Conn. Rep.* 39.

6. That the proceedings are erroneous, because no definite location of the line is given.    It may be drawn, at the option of the petitioner, from any point in the bar-way.

7. That they are erroneous, because the fences to be built, are not designated, but left either at the option of the petitioner, or as a subject of litigation.

8. That the appointment of the second committee was unauthorized ; the power conferred by the statute being exhausted, by the appointment of the first.

9. That the way should not have been laid out, as it was, with unlimited duration ; but should be limited to the continuance of the necessity which called for it.    15 *Conn. Rep.* 44.    As it now is, if the petitioner should sell his twenty-five acre tract to an adjoining proprietor, he would still own this way.

10. That the decree should have fixed the time for opening the way and payment of the money.    The decree does not direct that the money shall be paid at all, but leaves it entirely at the option of the petitioner whether he will pay

the money or have the way ; and this option he may exercise at any time, however remote ; and in the meantime, the respondent cannot safely put crops on his land, nor, without embarrassment, sell it.

*Bissell*, contra, contended, 1. That there was no soundness in the objection that the committee were not authorized to lay out the way, unless it was *strictly necessary*, and that, in this respect, there is a distinction between *public* and *private* ways. This distinction is supposed to be founded on a difference in the phraseology of the 12th and 14th sections of the statute relating to highways, as applicable to those subjects. By a reference to these sections, it will be seen, that there is no difference between public and private ways, and no foundation for the distinction claimed. The terms " *wanting*" " *of common convenience and necessity*," and " *necessary*," import precisely the same thing. This view is confirmed by sect. 11. where the powers conferred on the select-men are precisely the same—" may lay out such public and private ways as they may judge *needful*." So again in sect. 13th, the terms " *convenience* and *necessity*" " *common convenience* and *necessity*," are applied indiscriminately to both species of ways, clearly showing, that in the minds of the framers of the statute, there was no difference between them. A reference to other acts will confirm this idea, and shew that the terms " needful," " necessary" and " convenient" mean the same thing. *Stat. pp.* 396, 7. *ss.* 3, 4, 5. *p.* 622. *ss.* 2. 5. (ed. 1838.)

The whole argument is founded on the assumption that the term " necessary" in the 14th section of the statute, is used in its *strictest* sense, and means that the way prayed for is *indispensably requisite*. Such a construction of the statute is opposed to its whole frame and import, and to the uniform practice under it.

Further, this construction would prevent the laying-out of private ways *altogether ;* as in no case can such way be said to be indispensably requisite. It is not absolutely necessary that a man should cultivate his lands. Why should there be a higher degree of necessity, in the case of private, than of public, ways ? If so, where is the line to be drawn ; and by what criterion is the degree of necessity to

*Fairfield,*
June, 1842.

Reynolds
*v.*
Reynolds.

be measured ?  The truth is, the terms " necessary," " of common necessity," &c. are relative, and mean nothing more than convenience and fitness under existing circumstances.

2. That there is no uncertainty in the report of the committee, which renders it void.  In the first place, the county court have found, as a matter of fact, that there is not. Secondly, the report itself indicates no such uncertainty.

3. That the decree, in point of form, is unexceptionable. In the first place, it is not broader than the prayer of the petition.  Secondly, if otherwise, it is no cause of error ; and now is not the time for the plaintiff in error to urge the objection.  That part of the decree which goes beyond the petition, may be rejected as surplusage.

4. That the decree is not erroneous because it fixes no time within which the way shall be opened and the money paid.  The plaintiff in error cannot complain of this omission, as he is not to make the fences.

5. That if this omission renders the decree erroneous, it is so *pro tanto* only, and in all other respects it will be affirmed.

6. That no other objections will be noticed, by the court, as grounds of reversal ; as no others are embraced in the assignment of errors.  14 *Conn. Rep.* 140. *Reg.* 1.

STORRS, J.  The points made by the plaintiff in error will be considered in the order in which they have been presented on the argument.

1. It is claimed, first, that on the facts stated in the bill of exceptions and remonstrance, the petitioner was not entitled to the benefit of the statute providing for the laying-out of private ways.  From the finding of the county court, on the remonstrance of the respondent against the report of the committee appointed to lay out the way in question, as well as from the bill of exceptions filed by him, it appears, that, before the application of the petitioner to the select-men to lay out said way, the petitioner had applied to the said select-men for a way from the twenty-five acre tract mentioned in said petition, through the respondent's lands, to the highway lying *Easterly* thereof, which the select-men agreed to, and proceeded to lay out ; that, before they had perfected their doings, and when they had laid out said way in part only, they, at the request of the petitioner, forbore to proceed fur-

ther, in consequence of which the way so agreed to be laid out by them, never became legally established ; that said way, if laid out, would have enabled said petitioner to occupy said twenty-five acre tract, and would, by its connexion with said highway, have furnished the petitioner a continuous way to said tract from his dwelling-house, with convenience, as the respondent claimed, but, as the petitioner claimed, with less convenience than by the way prayed for in the present petition ; that the petitioner afterwards purchased the seventy acre tract mentioned in the petition, and applied to the select-men for the way prayed for in this petition ; whereupon the select-men offered to lay out the way which they had previously agreed to, and proceeded in part to lay out and forbore to proceed further with as aforesaid, but refused to lay out the way prayed for in this petition ; that the way established on this petition was not needed for the occupancy of the seventy acre tract, but would be of great convenience to him, not only in giving him access to the twenty-five acre tract, but in connecting it with the seventy acre tract ; and that said way runs from the latter, which adjoins the highway, to the former.

The respondent claimed, in the county court, and now insists, that as the way first contemplated and agreed to be laid out, would enable the petitioner to have access to his twenty-five acre tract, but was prevented by his acts, he is precluded, in this petition, from having the way laid out which is therein sought, and that he stands on the same ground as if the way first contemplated had been established.

It is difficult to perceive how the petitioner is precluded from a subsequent application, by the proceedings on the first. The objection proceeds on the ground that the petitioner is entitled to such a way as is necessary to his land. On the first application, no such way was established. By the discontinuance of the proceedings on that application, he was left in the same situation as if the application had not been made. He was left without access to his land ; for no way to it had been legally established. It cannot appear, nor is there any presumption, that the way first contemplated, if the select-men had not forbore to proceed, would finally have been established. Nor does it appear, that the way then contemplated would have been the most suitable or

*Fairfield,*
June, 1842.

Reynolds
*v.*
Reynolds.

proper way, when the application in the present case was made. It is obvious, that, if it was the most suitable when the first application was made, the circumstances may have so changed, that when the subsequent application was made, it would be wholly unsuitable, and the way afterwards laid out, the only one which could, with propriety, be established. Of those circumstances we cannot judge : it was a proper subject for the consideration of the committee, subject to the revision of the county court. A different state of things might, and we are to presume did, exist, when the last application was made. The determination of the select-men must be made with reference to the state of things when the application is made to them, and not at any previous period, when a different determination might be proper. And there is nothing before us to shew, that there was not such a change in the circumstances as rendered it proper to lay out the way which was finally established, rather than that which the select-men deemed the most fit, on the first application. That there might be such a change, in any case, is obvious : that it might be so, in this particular case, we can well believe, since it appears, that the petitioner had, between the first and second applications, purchased the seventy acre tract, which may have so changed the situation of the petitioner with respect to the other lot, to which he sought access, that it might have been proper to grant him a different way from that which would have been proper before. We cannot, as matter of law, say, that the way finally established was not legally established, merely because the select-men had previously offered and were ready to lay out for the petitioner a way, which, at his instance, they finally omitted to do. A discontinuance of proceedings, under an application to select-men for a private way, in consequence of which nothing effectual is finally done, is not, necessarily, a bar to a future application for the same purpose ; especially, when there has been, in the meantime, a change in the situation of the premises. *Bruyn* v. *Graham*, 1 *Wend.* 370.

2. The plaintiff in error next claims, that it appears from the record, that although the way laid out by the committee, is convenient for the petitioner, yet that it is not strictly and absolutely necessary in order to enable him to cultivate, or have access to, his land ; and he, therefore, insists, that by

the true construction of the statute on this subject, it is not a case where the petitioner is entitled to such way. This claim proceeds on the ground that there is a distinction in the provisions of the statute between public and private ways; and that the same necessity and convenience, which would warrant the laying-out of a public highway, is not sufficient, on an application for a private way; but that in the latter, a necessity for the way, in the strictest and most absolute sense of the term, must be shown. This distinction is deduced from a supposed difference of phraseology in the sections of the law, which relate respectively to the two species of ways.

*Fairfield,*
June, 1842.

Reynolds
*v.*
Reynolds.

As the record presents this case to us, we do not think, that we are here called on to decide whether the same or synonymous words used in the several sections of this statute as applicable to the two kinds of ways, are to be differently construed. The eleventh section, which provides for the laying-out of private ways, prescribes, that " the select-men of the respective towns, or a major part of them, may lay out such public highways or private ways as they shall judge *needful* within their respective towns." The fourteenth section, on which the present application is founded, provides, that " if the select-men, on application to them, shall refuse or neglect to lay out such private ways as may be *necessary* for any inhabitant of said town, the county court is empowered, upon application, to cause such ways to be laid out as may appear necessary," in the manner thereinafter mentioned.

The petition in this case, alleges, that the way prayed for " is of great convenience and necessity to the petitioner." It has not been, nor indeed could it successfully be, claimed, that this petition, which follows the very language of the statute, is not, in this respect, sufficient, whatever may be the import of the term " *necessary.*" On this petition, a committee was appointed " to enquire into the necessity of said way, and, if they shall be of opinion that the same is necessary, to survey and lay out the same," &c. The committee find and report, that the said way " is necessary;" and that they have surveyed and laid out the same, particularly describing it. To this report is a remonstrance, in which it is alleged, (among other grounds of objection)

that " the said way so by the committee laid out, is not necessary ;" and on a hearing upon this remonstrance, the court find, that this allegation is not true. Unless there is something in the record, which shews that the terms " *necessity*" and " *necessary*" are there used in some other sense than they are used in the statute, they must be deemed to be used in the same sense, whether the language of the statute is to receive its ordinary or a more rigourous interpretation ; and in this particular, therefore, the law has been complied with, and the decree of the county court is unexceptionable.

It is, however, claimed, by the plaintiff in error, that the facts stated in the bill of exceptions and found on the remonstrance, (all of which, so far as they are material, have been detailed in considering the first point,) are to be taken in connexion with the report, and that these shew that the way established was only highly convenient, but not indispensably necessary for the petitioner ; and that it was considered necessary, in a qualified, but not in a strict, sense. It is impossible for the court, from the facts thus presented, to judge of the degree of necessity which existed for the way prayed for, when the petition for the same was brought. The length of time between the two applications, and the changes which might have occurred in the relative situation of the twenty-five acre tract, in consequence of the purchase of the other, or any other alterations in the circumstances of the property, to which the petitioner sought access, which may have been numerous, and have a most important bearing on the question of the necessity of the way prayed for, and the degree of that necessity, are not so presented to us on the record, that we can say, that the strict necessity did not exist, which is claimed to be requisite. The facts detailed constitute matters of evidence and topics for reasoning, which were very proper to be presented to, and considered by, the county court, in arriving at a decision of the main fact, namely, the necessity of the way sought. That court, whose exclusive province it was, to find such fact, have found it expressly in favour of the petitioner. We cannot go into the propriety of that finding. If, indeed, that court had found explicitly, that the degree of necessity which existed for the way, was short of that for which the respondent contended, the question of construction endeavoured to be raised, might fairly arise ;

but it cannot be said to have done so, unless it is to be inferred from the mere circumstance that a way different from that finally adopted from the petitioner's land to the highway, might be laid out, without regard to its course, distance, expense, and the nature of the ground on which it would be located, or indeed any other of the numerous or peculiar circumstances, which might shew whether it would be such as the statute contemplates. That we can properly draw such an inference will not be seriously claimed. In this view of the case, it would be surperfluous to examine the question whether the statutes on this subject are to be differently construed, as they relate respectively to public and private ways; and therefore, a decision of it is waived.

*Fairfield*,
June, 1842.

Reynolds
*v.*
Reynolds.

3. The plaintiff in error further claims, that the private ways contemplated by the statute, are only those, which, while they are chiefly important to individuals, are such as the public also may use, and that the way in question connecting two tracts of land merely, and having no highway as its *terminus*, is not such a way, and therefore, could not legally be laid out. Neither the language nor the object of the statute warrants this construction. The language of the fourteenth section clearly shews, that the legislature intended to provide for the laying-out of such private ways as might be for the sole use of the applicant, as well as those which might also be for the common use of the inhabitants; for it provides, that the damages are "to be paid by the persons applying for such ways, [that is, 'such private ways as may be necessary for any inhabitant of the town,'] if the same be for their use only, but if for the common use of the inhabitants, then to be paid by the town." Whether the public have a right to the common use of every way, which is established under the statute, as a private way, is not necessary to be considered; but that no private way can be laid out, excepting such as it may be in the power of the public to use as a common highway, does not appear to be sustained by the statute. And no good reason is perceived, why a private way must necessarily connect with a public highway; or why it may not merely connect two tracts of the applicant. In the present case, as the applicant owned a tract adjoining the highway, it might be peculiarly proper, that he should have a way to the other from it, since it might furnish him with the

*Fairfield,*
June, 1842.

Reynolds
*v.*
Reynolds.

means of occupying and cultivating the former at less expense than to have the whole way laid out on the lands of others, who would have a claim for compensation, and with equal, if not greater, convenience to himself. It would, surely, be unreasonable to hold, that the owner of two tracts, one on the highway and the other in the rear, but separated from it at a short distance, by an intervening proprietor, must, at all events, have his private way to the latter laid out to the highway over the lands of others, rather than to have access to it through his own land.

4. It is, however, further insisted, that it is not competent for the legislature to authorize the laying-out of a way for the sole use of a particular individual; that it would be taking the property of one person for the use of another; that this is not within the legitimate scope of legislative power; and that, therefore, the statute, so far as it sanctions such a way, is void. Under the first general rule of this court, made in 1841, it is not competent for the plaintiff in error to raise this objection. By that rule, which is a most salutary one, it was incumbent on him, in his assignment of errors, to specify this particular objection as an error relied on. So far from being particularly pointed out and set forth, as required by that rule, it is either not alluded to at all, or merely hinted at, in the most vague manner; and not so that the other party, or the court, would have any reason to suppose, that our attention would be called to it. A consideration of the objection is, therefore, declined.

The remaining exceptions relate to the regularity of the proceedings in the county court.

1. It is claimed, that after that court set aside the report and doings of the first committee appointed by them, it was not competent for them to appoint another. We perceive, however, no objection to that course. Nothing in the statute forbids it; no valid reason is alleged against it; nor can any evil result from it. Indeed, it is indispensable that the court should possess this power, in order to effectuate the objects of the law; for otherwise, the rejection of the report of the first committee, would operate as a discontinuance of the proceedings, and it would be necessary to institute a new application, at an additional expense to all parties, to the delay of the final object, and with no benefit to any one. In analo-

gous cases, such as the appointment of auditors in book debt and account, and committees in chancery, as well as in cases like the one before us, the same practice has prevailed uniformly and immemorially, and there is no reason for disturbing it.

2. It is objected, that the location of the way surveyed is too uncertain, inasmuch as the commencement of it is not definitely pointed out. The committee " survey and lay out said private way 30 links wide, on the following line, running through the centre or in the middle of the same ; beginning at the bar-way" before mentioned, and then describe most minutely each of the courses and distances of said line, designating the land of each of the respondents on which each course runs ; and further stating, that the first course runs on the *East* side of a wall separating a plough field from a clover pasture ; that the second runs to the *North* line of the respondent, *Lockwood ;* that the third runs on the *East* side of a wall separating the lands of said respondent ; and that the line terminates at the foot of a ledge, on the *North* line of the petitioner's land. Without considering whether it would have been sufficiently certain to state merely that the road begun " at the bar-way," we are of opinion that, in this case, so far as the record shews, the point of its commencement is precisely ascertained, by the subsequent minute description of the line. It is sufficient for us, that the record discloses no uncertainty ; and so far from any being shewn by extrinsic evidence, the county court have found, that that part of the remonstrance, which states that the place over which the road is laid, is not defined with certainty, is untrue. This objection, therefore, cannot prevail.

3. It was not necessary, if it would have been proper, for the committee to direct what particular kind of fences the petitioner should build in the places designated for that purpose, since the law furnishes a sufficient guide on the subject.

4. It is claimed, that the decree is erroneous, because it vests a title in the petitioner to the way after he shall have sold the land for the accommodation of which it was laid out. It is not, however, fairly susceptible of this construction. Its language is, that " the said way, so laid out by said committee, shall be and forever remain a private way for the use and benefit of said petitioner, *his heirs and assigns,* in conformity

with the prayer of said petition." Taken in connexion with the petition and subject matter, this must be construed to mean the petitioner, or whoever derives a title from him to the land, for the benefit of which the way was laid out, by inheritance or purchase. Nor was it necessary for the court expressly to limit the continuance of the way to the necessity which required it. It is sufficient that it is laid out and established as a private way: its discontinuance, as such, must depend on circumstances over which the court has no controul; and it was neither necessary nor proper to provide against them.

5. The decree is also objected to, because it does not expressly direct when the way shall be opened and the damages assessed shall be paid; but merely directs, that, "upon the payment" by the petitioner to the respondents of the damages assessed to them respectively, "said way so laid out should be and forever remain a private way;" thus leaving it optional with the petitioner when to pay said damages, or whether to pay them at all, and of course, whether said way shall be established, and at what time. In this particular, we think, that the decree of the county court is clearly erroneous. The fourteenth section of the act on which this proceeding is founded, provides, that on the refusal of the selectmen to lay out such private ways as may be necessary, the county court may cause such ways to be laid out, in the same manner as public highways are by said act directed to be laid out. That mode is pointed out in the twelfth section, by which it is provided, that "said court shall direct when said highway shall be opened, and when the damages assessed shall be paid." This provision, and the reason on which it is founded, apply equally to public and private ways laid out in pursuance of the statute. It is made applicable to the latter, by the fourteenth section. It is a most wise and salutary provision. It would be highly unreasonable, oppressive and inconvenient to the owner of land over which a way is laid out, if no time is fixed, by which it would be in his power to ascertain when his land is to be subject to this incumbrance, or indeed whether it is to be subject to it at all. In such a state of uncertainty, he could neither cultivate it safely or profitably, nor alienate it advantageously, or without embarrassment and hazard. The object of the proceeding is to

have a way laid out and established. How can this be said to be done, when it is left wholly uncertain, and depends on the option of one of the parties, whether this shall be effected? It is, moreover, not consonant with the general principles on which judgments and decrees are rendered, and the end to be accomplished by them, that they should leave the matter thus uncertain and indeterminate.

*Fairfield,*
June, 1842.

Reynolds
*v.*
Reynolds.

As, however, all the proceedings of the county court are regular and correct, excepting this part of the decree, we think that the judgment should not be reversed *in toto*, but only as to this erroneous portion of it. Every thing is correct, excepting the conclusion to which the county court have arrived; and justice requires nothing more than that conclusion should be rectified. The reasoning of this court on this subject in *Smith* v. *Brush*, 11 *Conn. Rep.* 369. is fully applicable to this case, and warrants us in going no further back than to the error committed.

We are of opinion, therefore, that the judgment of the superior court is erroneous, in not reversing the judgment of the county court, so far as it omitted to fix a time for the opening of the way and for the payment of the damages assessed, and that it be affirmed for the residue; and that the cause be remanded to the county court to be there proceeded with according to law. 12 *Conn. Rep.* 88.

In this opinion the other Judges concurred.

Judgment reversed in part;
Affirmed for the residue; and
Remanded to the county court.