DICKEY, Appellant, v. TENNISON, Respondent.

1. Private property can not constitutionally be condemned and appropriated by the legislature to private use.
2. The "act to establish a neighborhood road in Washington county, approved December 8, 1855, (Sess. Acts, 1855, p. 466,) is unconstitutional.
3. Proceedings, instituted under an act of the legislature for the condemnation and appropriation of private property, commenced without notice to the owner thereof, are void.

### Appeal from Washington Circuit Court.

This was an action in the nature of an action of trespass *quare clausum fregit.* The defendant justified under an act of the legislature, approved December 8, 1855, (see Sess. Acts, 1855, Adj. Sess. p. 456,) authorizing him to open and keep open a neighborhood road in Washington county. The proceedings under said act were adduced in evidence by the

defendant. The court instructed the jury that said special act was constitutional, and if complied with it was a justification of the alleged trespass.

*Noell*, for appellant.

I. The road which was authorized by the act was not a public road. (See 25 Mo. 258, 277.) It was not a road of necessity. (11 Mo. 513.) No notice was given to plaintiff of the proceedings to condemn. (26 Mo. 193.)

*Frissell*, for respondent.

Scott, Judge, delivered the opinion of the court.

Our constitution provides that no private property ought to be taken or applied to public use without just compensation. Whilst this provision recognized the right of eminent domain in the state for the public use, there is nothing which sanctions the doctrine that the property of individuals may be taken for private use with or without compensation. Such a right would be hostile to the existence of private property. If one individual could by law be compelled to transfer his property to another against his will, a great stimulant to the acquisition of wealth, which contributes so much to the prosperity of the state, would be taken away. Hence commentators on our form of government, whilst they acknowledge the right of eminent domain in the state for public use in its broadest terms, are unanimous in the opinion that private property can not be taken for private use. Some difference of sentiment may arise as to the application of this principle, but none deny or doubt its existence.

In order to determine this controversy, then, it will be necessary to consider the act under which the road was opened, the opening of which gave rise to the controversy, and to determine from its provisions whether the property therein authorized to be taken was for the public use. The act is found in the private and local acts of the adjourned session of 1855, p. 467, and is entitled "An act to establish

a neighborhood road in Washington county," approved December 8th, 1855. Names do not alter things, and when an act is unconstitutional in its essence, it can not be made valid by specious names or titles. But for the word "neighborhood" in the act it would never occur to any one but that the road was for the private use of the defendant alone. By it he is authorized and permitted to open and keep open a neighborhood road. The defendant himself is to mark out and report the road to the county court, who are then to appoint commissioners to assess the damages. The commissioners are to be paid for their services. The defendant is required to pay all damages assessed and all costs attending the matter, and the establishment of the road is made to depend on the performance of these conditions. It is obvious from these details that the existence of the road depends upon the will of the defendant. He is permitted to open it. This is unusual language to be employed in authorizing a road required for the public use. He is to pay all damages assessed and the costs of the proceeding. This is a wide departure from the usual mode of paying the damages for the opening of the ordinary public highways of the county. The commissioners themselves are to be paid by the defendant, as he pays all costs. How unjust is this to those who were injured by the opening of the road! One party to a controversy pays the judges, and their wages are at his discretion. Who would go before a tribunal when he knew that it was paid for its services by his adversary and the amount of its compensation fixed by him. The legislature, in denominating this a neighborhood road, intended it should not be a public one, else the ordinary language would have been used in authorizing its establishment, and its existence would not have been made to depend on the will of the defendant. In ordinary parlance, a neighborhood road is one exempt from all control of the law, and its existence depends on the will of those over whose land it passes. The defendant, not owning the land, would compel the owner to submit to a right of way, not from necessity but for his own interest or

gratification. It may be answered that all these objections might be urged against an act authorizing the building of a railroad. In a railroad charter, the public utility of the contemplated improvement is obvious. The legislature is the judge of the necessity of taking private property for public use, and when the courts can see that the object for which private property is taken is public use, they can not control the discretion of the legislature in determining on the necessity of the exercise of the right of eminent domain. In the act before us there is nothing which shows that the condemnation of the plaintiff's property was for the public use; and as we may determine from the act authorizing the improvement whether the property directed to be taken is for the public use, there is no reason why the same means should not be resorted to in order to ascertain whether it is not for private use.

In my opinion, the proceedings are void for the want of notice to the plaintiff. Unless he was notified it was impossible, from the terms of the act, that he could have notice. The term of the county court at which the defendant was to apply for the appointment of commissioners is not designated in the act. It could be made when the defendant saw fit to have it done; so the plaintiff, without notice, could not be in court, as he would not know when the application would be made. It does not appear from the report of the commissioners that he was notified; it does not even appear that his consent was solicited; but, from the report, it may be inferred that the commissioners acted behind his back, without giving him any notice. While the proceedings were thus as it were studiously concealed from the defendant, of what avail to him was the right of appeal secured by the act. How could it be exercised unless he was notified of the steps taken by the defendant ? In giving a right to an appeal the statute must have contemplated that there should be notice to the party against whom the pleadings were had, otherwise he could not be benefitted by the right.

Nothing herein contained must be taken as expressing an

opinion in hostility to the constitutionality of the act entitled "An act to enable persons to secure the right of way." (R. C. 1855, p. 1562.) That act contemplates nothing more than the regulation of the exercise of a right which existed without any statute, a right of way of necessity which every man enjoyed who owned lands surrounded by the land of others.

The judgment will be reversed and the cause remanded; the other judges concur.