BANKHEAD *et al.* v. BROWN *et al.*

I. Per CURIAM.

1. Roads: APPEAL FROM ORDER ESTABLISHING. An appeal lies to the District Court from the action of the board of supervisors establishing a private road, under chapter 127 of the act of 1866.

2. Constitutional law: EMINENT DOMAIN. The correctness of the following principles recognized as being sanctioned by judicial authority:

1. The constitutional limitation contained in our bill of rights, prohibits, by implication, the taking of private property for any *private* use whatever, without the consent of the owner.

2. It forbids private property from being compulsorily taken for any but *public* use, and then only upon just compensation being made, the amount of which is to be assessed by a jury.

3. When the public exigencies demand the exercise of the power of taking private property for the public use, is solely a question for the legislature, upon whose determination the courts cannot sit in judgment.

4. But *what is* such a public use as will justify the exercise of the power of eminent domain. is a question for the courts to decide. But if a public use be declared by the legislature, the courts will hold the use public, unless it manifestly appears from the provisions of the act that they can have no tendency to advance and promote such public use.

3. Roads: PRIVATE WAYS: ACT OF 1866: CONSTITUTIONAL LAW. Chapter 127 of the Laws of 1866, entitled, "An act to provide for the establishment of private roads in Iowa," directs the taking of private property for *private* use, the roads thereunder authorized being essentially private and beyond the public control, and said act is, therefore, unconstitutional as being in conflict with our bill of rights. *Aliter*, if the roads provided for by the act were, in their nature, public. The reasons why they are essentially private, stated by DILLON, Ch. J.

4. —— ROAD TO COAL MINE. The State may provide that a public way may be established to coal and other mines: and it seems that the road in question, which was one leading from a coal bank on the land of petitioners, might have been legally established under the general law for the establishment of roads, though it did not exceed a half mile in length, and traversed the land of but a single owner.

5. —— The right to take land for a road demanded by the public convenience, does not depend upon the length of the road or the number of persons through whose land it may pass.

## II. Per BECK, J., dissenting.

6. —— A road established in pursuance of chapter 127 of the act of 1866, is not a private but a public road, and differs in no respect from highways recognized by the general law save in the manner of its establishment; in its use and the rights of the public thereto, it is essentially the same.

*Appeal from Jefferson District Court.*

FRIDAY, OCTOBER 9.

CONSTITUTIONAL LAW: EMINENT DOMAIN: PRIVATE ROADS: CONSTITUTIONALITY OF ACT OF 1866 AS TO PRIVATE ROADS. ——

Plaintiffs own certain lands in the N. W. ¼ 27, 72, 8, on which there is a coal bank. Defendants own the adjoining S. W. ¼ of 27 on which (as stated by counsel in argument) there is also a coal bank. Across the defendants' land there is a public road which runs to the railroad switch on the N. W. ¼ of section 34, adjoining the defendants' land on the south.

In October, 1866, the plaintiffs petitioned the board of supervisors, under the act of 1866 (Laws of 1866, ch. 127, p. 135), for the establishment of a *private road*, from the coal banks on their land (describing it), over the S. W. ¼ of section 27, etc., until it intersects the said public road which runs to the railroad switch.

The substance of this act is given in the margin.*

Plaintiffs made proof to the satisfaction of the board that they had given due notice of the application for the appointment of a commissioner, and filed a bond with sureties, and properly conditioned.

The board appointed a commissioner to view, examine

---

* It is entitled "An Act to provide for the establishment of private roads in Iowa."

By section 1 it is provided that private roads may be laid out in the same manner as county roads, and the general road laws of the State, as to the establishment of county roads, are applicable, except that it is not necessary that any person but the applicant shall sign the petition.

Section 2 provides, that the board of supervisors may appoint a commissioner to report upon the application, and requires a bond from the applicant to pay all costs and damages.

Section 3 provides, that no such road shall be ordered to be opened until the costs and damages have been paid and the conditions on which it is established shall have been complied with by the applicant.

Section 4 provides, that, on the final hearing (which is before the board of supervisors, which by law have the general power to establish highways), the board may receive petitions for and against the proposed road, hear testimony, and establish the road upon the payment of costs and damages, and upon such condition as to fences as to the board may seem just to all parties concerned. Laws 1866, ch. 127, p. 135.

and report upon the proposed road. The commissioner acted, made a survey and plat, and "recommended that the said road be established, as the same will be of great use and benefit to James Bankhead & Co. (plaintiffs), and others desiring access to their coal banks, situate upon N. W. ¼ sec. 27, 72, 8."

Soon afterward the defendants filed their claim for damages, asking to be allowed, if the proposed road were established, the sum of $5,000. They, with some others, also remonstrated to the board against the establishment of the road, "because it would occasion defendants great inconvenience and expense, and is not necessary for the public convenience, nor for that of Bankhead & Co., who have a much nearer way from their lands to a public highway than by the proposed road."

Appraisers appointed to appraise defendants' damages, assessed the same at $100.

Defendants appeared before the board of supervisors and asked, that the proceedings for the road be dismissed, on the ground, among others, that the law under which it is sought to be established, is unconstitutional.

The matter was considered by the board, which adopted the following resolution:

"*Resolved*, that the private road known as the Bankhead road, be established as soon as the applicant pays the damages assessed; and when the land through which it passes is fenced by the owner thereof, the applicant for said road is to put up and keep in repair good and sufficient gates on each side of said land." From the order establishing the road and allowing only $100 as damages, the defendants appealed to the District Court. In the District Court the defendants again moved that the proceedings for the road be dismissed. The motion was overruled, and the defendants excepted. The question as to the amount *of damages* to which the defendants were

entitled, was submitted to a jury, which assessed the same at $108. A *procedendo* was ordered to the board of supervisors, directing them to proceed in the establishment of the road, etc. From the action and rulings of the District Court, the defendants appeal to this court.

*Negus & Culbertson* for the appellants.

*C. C. Nourse,* with whom *Slagle & Achison,* for the appellees.

DILLON, Ch. J. — The record presents an interesting question of constitutional law. The appellees make the point that the question cannot be heard or decided by the District Court, on appeal from the action of the board of supervisors. Our opinion is otherwise. We have held that the statute allows an appeal from the action of the board of supervisors in establishing roads. And the statute (Rev. § 267) is broad enough to give to the party taking such an appeal, and whose land is taken for the road, the right to present to the District Court the question whether the act under which the road was laid out, was constitutional. For if the law is unconstitutional, the whole proceeding is *coram non judice* and void.

*1. Roads: appeal from order establishing.*

The constitutional provisions invoked by the defendants are found in the bill of rights. "Private property shall not be taken for public use, without just compensation." § 18. "No person shall be deprived of life, liberty or property, without due process of law." § 9. The limitation in section 18 of the bill of rights, upon the right of eminent domain, or the power of the legislature to take private property for public use, is found in all, or nearly all, of the State Constitutions.

*2. CONSTITUTIONAL LAW: eminent domain.*

Many of the questions growing out of this limitation

Bankhead v. Brown.

upon the otherwise practically if not theoretically abso-
lute power of the legislature to take the property of one
for the benefit of the many, have been settled by adjudi-
cation. The following propositions, applicable to the
case in hand, may be regarded as plain in themselves,
and as having the sanction of authority.

1. The constitutional limitation above quoted, pro-
hibits, by implication, the taking of private property for
any private use whatever, without the consent of the
owner. *In Matter of Albany street*, 11 Wend. 151; *Em-
bury* v. *Conner*, 3 Comst. 511; *Taylor* v. *Porter*, 4 Hill
(N. Y.) 140; *Beekman* v. *R. R. Co.*, 3 Paige, 73; Mr.
Sedgwick's opinion in Const. Law, p. 514; *Concord R. R.
Co.* v. *Greely*, 17 N. H. 47; *Dunn* v. *Charleston*, Harper
(S. C.) Law R. 189.

2. It forbids private property from being compulsorily
taken for any but *public* use, and then only upon just
compensation being made, the amount of which is to be
assessed by a jury. Bill of Rights, § 18, and see also
authorities just cited.

3. When the public exigencies demand the exercise of
the power of taking private property for the public use,
is solely a question for the legislature, upon whose deter-
mination the courts cannot sit in judgment. *Spring* v.
*Russell*, 7 Greenl. 292; *Concord Railroad Co.* v. *Greely*,
17 N. H. 47; *Varick* v. *Smith*, 5 Paige, 160; *Hartwell*
v. *Armstrong*, 19 Barb. 166; *Bloodgood* v. *Railroad Co.*,
18 Wend. 14; *Beekman* v. *Railroad Co.*, 3 Paige, 72;
Sedgw. on Const. Law, pp. 511–514.

4. That what is such a public use as will justify the
exercise of the power of eminent domain, is a question for
the courts. 2 Kent Com. 340; *Concord Railroad Co.* v.
*Greely*, 17 N. H. 47; *Hansen* v. *Vernon*, 26 Iowa,

But "if a public use be declared by the legislature the
courts will hold the use public, unless it manifestly ap-

pears by the provisions of the act,. that they can have no tendency to advance and promote such public use." Per SHAW, Ch. J., in *Hazen* v. *Essex County*, 12 Cush. 477.

Having thus stated the general principles of law applicable to the question of the constitutionality of the act 3. ROADS: pri- of 1866, we proceed to state briefly the reasons vate ways: act of 1866. for holding the same invalid. The material inquiry is, whether land compulsorily taken, under the act of 1866, is taken for public, as distinguished from private, use, within the meaning of the bill of rights? If taken for public use the act is constitutional — otherwise, if taken for private use. That private property may be constitutionally taken for public highways cannot be doubted and is not denied. That it is the duty of the legislature to provide public highways for the passage and intercourse of the people of the State is clear. It would be strange indeed if it had not the power to discharge this duty. It has this power, and the only restriction upon it is, that the owner of land taken for this public use must receive a just compensation therefor. Without a road, or the means of getting a road, to the farm of the citizen, he could not well obey the *venire* that commands him to attend at the court as a juror — could not well pay his taxes, vote, reach the church or send his children to school. Hence, the State may properly provide for the establishment of a public road or highway to enable every citizen to discharge his duties. The State is not bound to allow its citizens to be walled in, insulated, imprisoned; but may provide them a way of deliverance.

And taking so much of A's land as may be necessary to establish a public highway, to enable B to have an outlet to the market, and to put him in communication with his neighbors, with the town, with the church, with the school, etc., is not in a just sense, although B be the person primarily and even principally benefited, the tak-

ing of A's property, for the private use of B, but for the general good.

So, the State may provide that a public way may be established to coal or other mines.   Mineral wealth is not
4. —— road to  to be locked up forever, beyond the power of
coal mine.    the legislature to force a public passage to the mines, to enable the owner to get it to market, and others to reach the mines in order to buy it there.

If the road now in question had been established as a public road under the general road law (as we confess we do not see why it might not have been), there would, in our minds, be no doubt as to its validity, although it does not exceed a half mile in length, and traverses the lands of but a single owner.   For the right to take land for a public road, that is a road demanded by the public convenience, as an outlet to a neighborhood, or, it may be, as I think, for a single farmer without other means of communication, cannot depend upon the length of the road, or the number of persons through whose property it may pass.

With respect to the act of 1866, we are of opinion that roads thereunder established are *essentially private*, that is, are the private property of the applicant therefor, because,

*First.* The statute denominates them *"private roads,"* and is entitled " an act to provide for establishing private roads."

If the roads established thereunder were not intended to be *private*, and different from ordinary and public roads, there was no necessity for the act.

*Second.* Such road may be established upon the petition of the applicant alone; and he must pay the costs and damages occasioned thereby, and perform such other conditions as to fences, etc., as the board may prescribe.

*Third.* The public are not bound to work or keep such roads in repair, and this is a very satisfactory test as to whether a road is public or private.

*Fourth.* We see no reason when such a road is established, why the person at whose instance this was done, might not lock the gates opening into it, or fence it up, or otherwise debar the public of any right thereto.

Could not the plaintiffs in this case, after having procured the road in question, abandon it at their pleasure? Could they not relinquish it to the defendants without consulting the board of supervisors? If this is so, does it not incontestibly establish that it is essentially *private?* For it must be private if it is of such a nature that the plaintiffs can, at their pleasure, use or forbid its use, abandon or refuse to abandon it, relinquish or refuse to relinquish it.

If the act of 1866 is valid, might not the plaintiffs, having procured the road, use it for laying down a tram or horse railway, and forbid every body from using the road, and even exclude all persons therefrom? Who could prevent it?

These considerations mark the great difference between such a road and a public highway, and demonstrate the essentially *private* character of the road.

In the following cases, acts substantially like the Iowa act of 1866, providing for the establishment of *private* roads, have been declared unconstitutional: *Nesbit* v. *Trumbo,* 39 Ill. 110, 1866, decided under a statute similar to the Iowa act (Laws of Illinois, A. D. 1861, p. 263); *Dickey* v. *Tennison,* 27 Mo. 373; *Clack* v. *White,* 2 Swan (Tenn.) 540; *Taylor* v. *Porter,* 4 Hill (N. Y.) 140, approved, 2 Kent Com. 339; *Sadler* v. *Langham,* 34 Ala. 311; see also *Newell* v. *Smith,* 15 Wis. 101.

*Ferris* v. *Bramble* (5 Ohio St. 109) is consistent with the above, sustaining the validity of a township road under

the Ohio statute, on the ground that all persons have the right to use it as a *public road*.

The New Hampshire cases cited by the plaintiff's counsel do not decide the constitutional question here involved. *Snyder* v. *Warford* (11 Mo. 513), inconsistent with the case cited from 27 Mo. 373 (*supra*) and *Harvey* v. *Thomas* (10 Watts, 63), followed in the case of the *Pocopsen Road* (16 Pa. St. 15), are of doubtful soundness elsewhere. See 34 Ala. 311.

The constitutionality of "private passways," was not decided in *McCauley* v. *Dunlap* (4 B. Mon. 57), nor in *Reynolds* v. *Reynolds* (15 Conn. 83).

*Brewer* v. *Bowman* (9 Geo. 37) decided the act of 1834, authorizing the establishment of "private ways," unconstitutional because no provision was made for compensating the owners of the land taken. Whether such an act would have been constitutional if provision for compensation had been made, the court had no occasion judicially to determine.

In *Hickman's case* (4 Harr. [Del.] 580) the court held, that the act authorizing the laying out of private roads was constitutional, regarding these roads as branches of the public roads and open to public use. The case of *Perrine* v. *Farr* (2 Zab. 362) is of the same character.

Wherever, by any well-considered decision, private roads have been sustained, it was because they were regarded as public in their character; and if properly so regarded, laws authorizing their establishment would doubtless be valid. But, as we have seen, roads established under the Iowa act of 1866 are private in their character and not public, and are, as to amendment and repairs, within the jurisdiction of the road or township officers.

The act of 1866 does not contemplate that the board of supervisors shall order them to be opened as public

highways, nor can road supervisors require persons to labor on any but "public highways." Rev. §§ 885-887.

We have the less hesitation in declaring the act of 1866 unconstitutional, inasmuch as every useful purpose it was intended to accomplish may be attained under the general statutes of the State authorizing the establishment of public roads.

√

Reversed.

BECK, J. (dissenting). — I am constrained to dissent from the reasoning and conclusions of the foregoing opinion. I will content myself with stating briefly my own conclusions, without attempting to state at length the reasons upon which I base them.

A road established in pursuance of chapter 127 of the Laws of 1866, in my opinion, is a public road, and differs, in its use and the right of the public thereto, in no respect from highways recognized by law and denominated, in the opinion of the chief justice, public roads. The public possess the same right to use it as a road established in any other manner authorized by law. The party upon whose petition it is established has no exclusive right thereto. It differs from other roads only in the manner which the law directs shall be pursued to establish it.

This difference in no way indicates, that it is not, in fact, a public way. There is not one word in the act under which it is established which prohibits the public from using it, or gives the petitioner exclusive control over it. The reasons for holding it to be a private road, drawn from the body of the act, if they sustain such a conclusion, will, it seems to me, warrant a like conclusion in regard to roads, established under other enactments, that are confessedly public. It is established upon the petition of one citizen ; so may public roads be established under

Bankhead v. Brown.

other provisions of the statutes. The citizen petitioning for it must pay the costs and damages attending its location. The same fact is true of some other public roads. The supervisors may prescribe conditions in relation to fencing it, and it is claimed, that this implies the right to permit gates to be erected thereon. If this be so, can it be deemed that the legislature could not permit gates to be erected upon public ways? Heretofore, the legislature has not seen fit so to do, but the power cannot be questioned.

The fact, that, in the title of the act, the word " private " is used, to my mind gives no strength to the argument in support of the conclusion that the road is private, or for the benefit of the petitioner, and subject to his control. This word is used simply to indicate the manner of its establishment. It by no means indicates, that it is owned or controlled by a private citizen. Our statutes denominate certain highways " State roads " and " county roads," and, at one time, roads were established by the township trustees which were termed " township roads." These names simply indicate that the different roads were established in different ways, and not that they are under the control of the State, county or township.

It is certainly in no manner incomprehensible that a private citizen should procure the establishment of a road, and that it should be termed a private road, yet be used by the public generally. It cannot be argued, that the mere use of the term "private," in the title of the act, without one word of limitation in the body thereof, or any provision that the road established thereunder is a private way, will, of itself, determine that the road is under the control of, owned by, and established for the sole use of, the party who petitions for its establishment. Whether these views be conclusive or not, it must be admitted, that, at least, they throw great doubt on the

conclusion upon this point arrived at by my brothers as expressed by the chief justice. They are supported by the following authorities: *Metcalf* v. *Bingham*, 3 N. H. 461; *Proctor* v. *Andover*, 42 id. 351; *Clark* v. *B. C. & M. Railroad*, 24 Foster, 118; *Perrine* v. *Farr*, 2 Zab. 362; *Hickman's case*, 4 Harrington, 580; *McCauly* v. *Dunlop*, 4 B. Monroe, 57; *Ferris et al.* v. *Bramble*, 5 Ohio St. 109.

Courts will annul statutes, by declaring them in conflict with the Constitution, only in cases where there is absence of all well founded doubts. The conflict must be clear, and the judicial mind must be free from all uncertainty and hesitation upon the question. Neither will courts put such a construction upon a statute, that will bring it in conflict with the Constitution, but will, if it be capable of two constructions, one in conflict, the other in harmony, with that instrument, adopt that one which will support the statute, presuming that the legislature intended the enactment to be in harmony with the fundamental and paramount law. The statute in question, I am fully convinced, authorizes the establishment of public roads. But, if such a construction be even doubtful, it should be adopted in order to uphold the law. The contrary construction should be discarded, for it is, to say the least, doubtful both upon precedent and reason. I am therefore not prepared in this case to assent to the exercise by this court of its highest power, the annuling of an act of the supreme legislative power of the State.

It is contended, that, under the statutes existing at the time of the enactment of the law in question, the road could have been established, if it be a public road, and that this fact is an argument to sustain the proposition that the legislature intended the act to provide for the establishment of private ways. I am unable to perceive the force of this argument. Certainly, it is perfectly

competent for the legislature to provide more than one way to establish a public road. The law making power often provides several remedies or ways of relief for the people for wrongs or oppressions they may suffer. The necessity or policy of such laws it is not for the courts to doubt. The power is possessed, and, when exercised, must be submitted to by the citizens and courts.

The road in question being, in my opinion, a public road, no appeal from the order of the supervisors establishing it can be taken to the District Court; that court, therefore, acquired no jurisdiction of this cause. *McCune* v. *Swofford*, 5 Iowa, 552; *Myers* v. *Simms*, 4 id. 500; *Ball* v. *Humphrey*, 4 G. Greene, 204; *Lippencott* v. *Allander*, 23 Iowa, 536.

I am therefore of the opinion, that the judgment of the District Court should be affirmed.