ALBERT WELTON, APPELLEE, v. THOMAS J. DICKSON ET AL., APPELLANTS.

FILED JANUARY 4, 1894. No. 5488.

1. **Eminent Domain**: PRIVATE PROPERTY FOR PRIVATE USE. The constitutional provision, "The property of no person shall be taken or damaged for public use without just compensation," prohibits, by implication, the taking of private property for any private use whatever without the consent of the owner.

2. **Such constitutional provision** forbids private property from being compulsorily taken or damaged for any but public use, and then only upon just compensation being made, the amount of which is to be assessed by a jury.

3. **The want of power in a legislature to transfer to one man the property of another** without his consent, either with or without compensation, does not depend upon constitutional restriction, but upon the fact that it is not the exercise of the power of making laws or rules of civil conduct, which is the branch of the sovereign power committed to the legislature.

4. **Eminent Domain.** When the public exigencies demand, the exercise of the power of taking private property for the public use is solely a question for the legislature, upon whose determination the courts cannot sit in judgment.

5. But what is such a **public use** as will justify the exercise of the power of eminent domain is a question for the courts to decide. But if the public use be declared by the legislature, the courts will hold the use public, unless it manifestly appears from the provisions of the act that they can have no tendency to advance and promote such public use. *Bankhead v. Brown*, 25 Ia., 540, and *Coster v. Tide Water Co.*, 18 N. J. Eq., 54, followed.

6. **Private Roads:** CONSTITUTIONAL LAW. Sections 47, 48, 49, 50, 51, and 52 of chapter 78, Compiled Statutes, 1893, authorize the taking of private property for private use, the roads therein mentioned being essentially private and beyond the public control, and said sections are therefore unconstitutional and void.

7. **Equitable Jurisdiction:** INJUNCTION. The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction; and the application of this principle to a particular case must depend altogether upon the character of the case as disclosed in the proceedings. It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. *Watson v. Sutherland*, 72 U. S., 74, followed.

APPEAL from the district court of Lancaster county. Heard below before HALL, J.

The opinion contains a statement of the case.

*N. Z. Snell* and *Beeson & Root*, for appellants:

The county commissioners have exclusive original jurisdiction in laying out and establishing roads. In this class of cases the board acts judicially. It is discretionary with it to grant or refuse the relief asked. The only way its final orders in such cases can be attacked is by review. (*State v. Clary*, 25 Neb., 403; *State v. Palmer*, 18 Neb., 644.)

There being an adequate remedy at law, chancery will not

Welton v. Dickson.

interfere. (*Brown v. Otoe County*, 6 Neb., 111; *Clark v. Dayton*, 6 Neb., 193; *Ellis v. Karl*, 7 Neb., 381.)

The proper place to raise questions as to the propriety or impropriety of establishing the proposed road is before the commissioners themselves.  The remedy of the party aggrieved by the decision is by a direct proceeding to review in the district court. (*Poyer v. Village of Des Plaines*, 123 Ill., 111; *Wallack v. Society*, 67 N. Y., 23; 1 High, Injunctions [2d ed.], secs. 29, 88; 2 High, Injunctions [2d ed.], secs. 1242, 1244, 1257, 1258; *West v. Mayor of New York*, 10 Paige [N. Y.], 539.)

The sections of chapter 78, Compiled Statutes, providing for the establishment of roads, are not unconstitutional as allowing private property to be taken for private use. The law is valid. (*Sherman v. Buick*, 32 Cal., 241; *Allen v. Stevens*, 5 Dutch. [N. J.], 509; *In re Hickman*, 4 Harring. [Del.], 580; *Harvey v. Thomas*, 10 Watts [Pa.], 65; *Pocopson Road*, 16 Pa. St., 15; *Killbuck Private Road*, 77 Pa. St., 39; *Waddell's Appeal*, 84 Pa. St., 90; *Metcalf v. Bingham*, 3 N. H., 461; *Proctor v. Andover*, 42 N. H., 351; *Brewer v. Bowman*, 9 Ga., 37; *Robinson v. Swope*, 12 Bush [Ky.], 21; *McCauley v. Dunlap*, 4 B. Mon. [Ky.], 57; *Denham v. County Commissioners of Bristol*, 108 Mass., 202; *Jones v. Andover*, 6 Pick. [Mass.], 59; *Commonwealth v. Hubbard*, 24 Pick. [Mass.], 98; *Ferris v. Bramble*, 5 O. St., 109; *Shaver v. Starrett*, 4 O. St., 494; *Bankhead v. Brown*, 25 Ia., 540.)

*Pound & Burr, contra:*

Commissioners acting under color of law and proceeding without any legal authority to permanently appropriate the land of a private citizen may be enjoined from proceeding with such appropriation. (2 High, Injunctions, secs. 1308, 1309, 1318; *Beatty v. Beethe*, 23 Neb., 210; *Follmer v. Nuckolls County*, 6 Neb., 204; *McArthur v. Kelly*, 5 O., 140; *Anderson v. Hamilton County*, 12 O. St., 635; *Mo-*

53

*hawk H. R. Co. v. Artcher*, 6 Paige [N. Y.], 83; *Wild v. Deig*, 43 Ind., 455; *Witham v. Osburn*, 4 Ore., 318; *Green v. Green*, 34 Ill., 320; *Green v. Oakes*, 17 Ill., 249; *Lumsden v. City of Milwaukee*, 8 Wis., 239; *Waddell's Appeal*, 84 Pa. St., 90; *Coster v. Tide Water Co.*, 18 N. J. Eq., 55.)

It is well established that when county commissioners or other public officers are proceeding in excess of their powers, or in the absence of power or jurisdiction, and their acts are likely to result in irreparable injury to property owners, an injunction is the appropriate relief. (*Armstrong v. City of St. Louis*, 3 Mo. App., 151; *Town of Covington v. Nelson*, 35 Ind., 532; *Conrad v. Smith*, 32 Mich., 429; *Carter v. City of Chicago*, 57 Ill., 283; *Dinwiddie v. President and Trustees of Rushville*, 37 Ind., 66; *Mayor and City Council of Baltimore v. Gill*, 31 Md., 375; *Lumsden v. City of Milwaukee*, 8 Wis., 239; *Follmer v. Nuckolls County*, 6 Neb., 204; *Vanderlip v. City of Grand Rapids*, 41 N. W. Rep. [Mich.], 677; *Board of Commissioners of Benton County v. Templeton*, 51 Ind., 266.)

When there is some legal remedy, but it is clearly inadequate to give the relief to which the plaintiff is entitled, he may have an injunction. (*Watson v. Sutherland*, 5 Wall. [U. S.], 74; *Bishop v. Moorman*, 98 Ind., 1; *Keene v. Bristol*, 26 Pa. St., 46; 3 Pomeroy, Equity, sec. 1399; *Roy v. Atchison & N. R. Co.*, 4 Neb., 439; *Omaha & N. W. R. Co. v. Menk*, 4 Neb., 21.)

A constitutional provision that "the property of no person shall be taken or damaged for public use without just compensation" should be construed as equivalent to a declaration that private property, without the consent of the owner, shall be taken only for public use, and this only upon a just compensation. Such a provision prohibits private property from being taken for private use. (Sedgwick, Stats. & Const. Law [2d ed.], pp. 447–450; *In re Albany Street, New York*, 11 Wend. [N. Y.], 149; *Bloodgood v. Mohawk & H. R. Co.*, 18 Wend. [N. Y.], 9; *Reeves v.*

*Treasurer of Wood County*, 8 O. St., 346; *McQuillen v. Hatton*, 42 O. St., 204; *Jenal v. Green Island Draining Co.*, 12 Neb., 166; *Forney v. Fremont, E. & M. V. R. Co.*, 23 Neb., 468; *Osborn v. Hart*, 24 Wis., 90; *In re Application of Eureka Basin Warehouse & Mfg. Co.*, 96 N. Y., 49; *Anderson v. Kerns Draining Co.*, 14 Ind., 199; *Tyler v. Beacher*, 44 Vt., 648; *Consolidated Channel Co. v. Central P. R. Co.*, 51 Cal., 269; *Beekman v. Saratoga S. R. Co.*, 3 Paige Ch. [N. Y.], 73.)

Statutes authorizing private roads or right of way to be laid out across the lands of unwilling persons by the exercise of the right of eminent domain are held, in states having a constitutional provision like our own, unconstitutional and void. (*Bankhead v. Brown*, 25 Ia., 540; *Nesbitt v. Trumbo*, 39 Ill., 110; *Wild v. Deig*, 43 Ind., 455; *Taylor v. Porter*, 4 Hill [N. Y.], 140; *In re Albany Street, New York*, 11 Wend. [N. Y.], 149; *Dickey v. Tennison*, 27 Mo., 373; *Osborn v. Hart*, 24 Wis., 89; *Clack v. White*, 2 Swan [Tenn.], 540; *Varner v. Martin*, 21 W. Va., 534; *Roberts v. Williams*, 15 Ark., 43; *Witham v. Osburn*, 4 Ore., 318; *Sadler v. Langham*, 34 Ala., 311; *Crear v. Crossly*, 40 Ill., 175; *Stewart v. Hartman*, 46 Ind., 331; *Sholl v. German Coal Co.*, 118 Ill., 427; *Ross v. Davis*, 97 Ind., 79; Elliott, Roads & Streets, p. 146; Lewis, Eminent Domain, sec. 167.)

As to what is a public use is a question of law to be decided by the courts. (*McQuillen v. Hatton*, 42 O. St., 202; *Tyler v. Beacher*, 44 Vt., 648; *In re Application of Eureka Basin Warehouse & Mfg. Co.*, 96 N. Y., 42; *City of Savannah v. Hancock*, 91 Mo., 54; *Coster v. Tide Water Co.*, 18 N. J. Eq., 55.)

RAGAN, C.

Chapter 78, Compiled Statutes of 1893, provides:

"Sec. 47. When the lands of any person shall be surrounded or enclosed, or be shut out and cut off from a

public highway by the lands of any other person or persons, who refuse to allow such person a private road to pass to or from his or her said land, it shall be the duty of the county board, on petition of any person whose land is so surrounded or shut out, to appoint three disinterested freeholders of the precinct or township, in counties under township organization, in which the land lies, as commissioners to view and mark out a road from land of the petitioner to the nearest public highway, and assess the damages the person will sustain through whose land the road will pass.

"Sec. 48. The person desiring to secure the right of way shall give the person or persons through whose lands the road will run at least two days' notice of such intended application; by leaving or causing to be left a written notice at his usual place of abode; and satisfactory evidence that such notice has been given shall be presented to the board before commissioners shall be appointed.

" Sec. 49. The commissioners shall, before entering upon the discharge of their duties, take and subscribe an oath before some judge or justice of the peace, that they are not interested nor of kin to either of the parties interested in the proposed road, and that they will faithfully and impartially view and mark out said road to the greatest ease and convenience of the parties, and as little as may be to the injury of either, and assess the damages which will be sustained by the party through whose land it will run.

" Sec. 50. Said commissioners shall make out a report of their proceedings, stating particularly the course and distance of said road, and the amount of damages assessed, which report, together with a certificate of the oath, shall be returned to the county commissioners and filed by the county clerk.

"Sec. 51. If the report be approved by the county board, and the petitioner shall produce satisfactory evidence that he has paid the damages assessed (or tendered payment, if

the party refuse to receive it), and all costs attending the proceedings, the county board shall grant an order to said petitioner to open a road not exceeding fifteen feet in width; and if any person or persons obstruct said road, such person or persons shall be liable to all the penalties for obstructing a public road; *Provided, however,* If such road shall pass through any inclosure, and it shall be required by the owner thereof, the person applying for such road shall put up and keep at each entrance into such inclosure a good and substantial swinging gate; *Provided further,* That either party may appeal from the decision of the county board in like manner as prescribed in case of public roads.

"Sec. 52. Upon the establishment of the right of way, as in this chapter provided, the same shall vest and descend as an easement in the party and his or her heirs or assigns forever."

The board of county commissioners of Lancaster county, on the petition of Owen Marshall and Aaron C. Loder, appointed three commissioners, who viewed and marked out a private road through the land of one Albert Welton, and made report of their proceedings to said board of county commissioners. Thereupon, Welton brought this suit in the district court of Lancaster county to enjoin Marshall and Loder, and the board of county commissioners, from laying out and establishing on his land the private road petitioned for. The suit is based on the grounds that the statute quoted above is unconstitutional, and that the threatened action of the defendants, if permitted, will work an irreparable injury to Welton, for which he has no adequate remedy at law. The appellants demurred to the petition on the ground that it did not state a cause of action. The court overruled the demurrer and entered a decree perpetually enjoining the board of county commissioners from establishing such private road on the lands of Welton. The case comes here on appeal.

The principal question in the case is the constitutionality

of the sections of the statute recited above. If B's land shall be shut off from public highways by the land of A, and he shall refuse to allow B a private road across his, A's land, then this statute, against A's consent, takes a part of his land and transfers it to B, to be used as a private road by him, his heirs and assigns, forever. Section 21, article 1, of the constitution of the state provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." The uniform holding of the courts is that such a constitutional provision as this is an implied prohibition on the power of the legislature to take the private property of A without his consent, even when compensation is made, and transfer it to B for his private use.

The supreme court of the state of New Jersey, in *Coster v. Tide Water Co.*, 18 N. J. Eq., 54, declares: "This want of power in the legislature does not depend upon any constitutional restriction, but upon the fact that it is not the exercise of the power of making laws or rules of civil conduct, which is the branch of the sovereign power committed to the legislature. To justify the taking of the citizen's property by the legislature, the use for which it is appropriated must be a public use."

Speaking to this subject the eminent jurist, Cooley, says: "The right of eminent domain implies that the purpose for which it may be exercised must not be a mere private purpose; and it is conceded on all hands that the legislature has no power in any case to take the property of one individual and pass it over to another without reference to some use to which it is to be applied for the public benefit. The right of eminent domain does not imply a right in the sovereign power to take the property of one citizen and transfer it to another, even for a full compensation, where the public interest will be in no way promoted by such transfer." (Cooley, Const. Lim. [6th ed.], p. 651.)

Now, is the use for which this statute authorizes the tak-

ing of appellee's land a public or private one? Is the purpose of this law to take A's property and transfer it to B for the use of the public, or for B's private use? If the private road contemplated by this law is for the use of the public, the law is good; if, on the other hand, the road authorized is for the private use and benefit of an individual, the law is void; and, whether one or the other, is a question of law. To make the use public, it need not be for the benefit of the whole public or state, or any large portion of it. It may be for the inhabitants of a small or restricted locality, but the use and benefit must be in common, not to a particular individual or estate. (*Coster v. Tide Water Co.*, 18 N. J. Eq., 54.)

Section 4511, Revised Statutes of Ohio, provides: "The trustees of any township may, whenever in their opinion the same will be conducive to the public health, convenience, or welfare, cause to be established, located, and constructed, as hereinafter provided, any ditch within such township." Certain parties petitioned for the construction of a ditch across the lands of others under said statute. On the trial the court was requested to charge the jury as follows: "If you find that the petitioners  *  *  *  are the only persons in any way interested in the location of the ditch, and that it would not be conducive to public health, convenience, or welfare to locate the ditch in question, then, and in that case, you should return your verdict against the proposed ditch." The court refused to give this instruction, and the case was taken to the supreme court for review, and that tribunal say: "The facts being ascertained, the question whether or not a ditch will conduce to the public health, convenience, or welfare, within the meaning of Rev. Stat., sec. 4511, so that it will be of public use, is a question of law." (*McQuillen v. Hatton*, 42 O. St., 202.)

In *Jenal v. Green Island Draining Co.*, 12 Neb., 163, was considered a statute of this state, authorizing the con-

struction of levees, dikes, and drains, and the reclamation of wet and overflowed lands by incorporated companies. The act provided, among other things, that the company might appropriate any land, stones, timber, gravel, or other materials necessary for the right of way or construction, maintenance, or improvement of the proposed work by first paying into the county treasury of the county where the land is situate, for the use of the owner of the land, the amount of damage assessed by the appraisers who were appointed therefor. Chief Justice MAXWELL, speaking for this court, said : "The statute in question authorizes the entry upon lands, and construction of drains whenever the private interest of the corporation requires it, and without reference to the public welfare. Any number of persons, not less than three, being the owners of wet and overflowed lands, whenever it is for their interest, may locate a ditch across the lands of others. * * * This is an infringement of the right of private property and is unauthorized and void."

The general road law of this state, chapter 78, Compiled Statutes, 1893, confers on county boards of the several counties of the state general supervision over the public roads of the state, with power to maintain them; requires a petition for a public road to be signed by ten freeholders; fixes their width at sixty-six feet; makes the cost of their construction and maintenance a public charge; provides that when persons traveling with carriages shall meet on such roads, each shall turn to the right of the center thereof; prohibits all persons addicted to the excessive use of intoxicating liquors from being employed as drivers on said roads; prohibits the running of horses on such roads; the leaving in such roads, unhitched or unguarded, any horses or teams; and that the overseer of each road district shall annually cause furrows to be plowed on either side of all such roads, as fire guards. None of these provisions are found in this act in reference to private roads, and none

of these provisions apply to private roads. Had the legislature intended that these private roads should be for the public use, then, indeed, the entire private road act would be superfluous; but the law we have under consideration expressly provides: "Upon the establishment of the right of way, as in this chapter provided, the same shall vest and descend as an easement in the party and his or her heirs or assigns forever." (Sec. 52, ch. 78, Comp. Stats.) The fact that the legal title is not taken, but an easement created, does not render this law less objectionable; for what value is one's legal title if another have the possession and use forever? Marshall and Loder would acquire no greater estate to the land in question if Welton gave them an absolute warranty deed. The public have an easement in all public roads, while the legal title remains in the adjoining owner, but by this law no right in or to the private road is conferred on the public. This law is, and was intended to be, and act for the transfer of A.'s property against his consent, compensation being made to him, to B, his heirs and assigns, for their private use and convenience, and is, therefore, in conflict with the implied prohibitions of the constitution, and void.

In *Bankhead v. Brown*, 25 Ia., 540, the question of the constitutionality of a private road law was decided. By the statute considered in that case it was provided:

Section 1. Private roads may be laid out in the same manner as county roads, and the general road laws of the state as to the establishment of county roads are applicable, except that it is not necessary that any person but the applicant shall sign the petition.

Sec. 2. That the board of supervisors may appoint a commissioner to report upon the application, and requires a bond from the applicant to pay all costs and damages.

Sec. 3. That no such road shall be ordered to be opened until the costs and damages have been paid and the conditions on which it is established shall have been complied with by the applicant.

Sec. 4. That on the final hearing the board may receive petitions for and against the proposed road, hear testimony, and establish the road upon the payment of costs and damages, and upon such condition as to fences as to the board may seem just to all parties concerned.

It will be observed that the Iowa law is substantially the same as the one under consideration here, with the exceptions that the Nebraska statute contains no provisions allowing the board of county commissioners to receive petitions for and against the proposed road; and the Iowa statute has no provisions vesting the perpetual easement in the private road established in the party petitioning therefor.

*Bankhead v. Brown, supra,* arose out of an effort of Bankhead to have established a private road under the provisions of the Iowa law just quoted, across the land of Brown, in order to reach Bankhead's coal mine. The establishment of the private road was resisted by Brown on the ground that the law authorizing it was unconstitutional, in that it proposed the taking of private property for private uses. Dillon, C. J., delivering the opinion of the court, said: "With respect to the act, * * * we are of opinion that roads thereunder established are essentially private, that is, are the private property of the applicant therefor, because, first, the statute denominates them 'private roads.' * * * If the roads established thereunder were not intended to be private and different from ordinary public roads, there was no necessity for the act. Second. Such road may be established upon the petition of the applicant alone, and he must pay the costs and damages occasioned thereby and perform such other conditions as to fences, etc., as the board may prescribe. Third. The public are not bound to work or keep such roads in repair, and that is a very satisfactory test as to whether the road is public or private. Fourth. We see no reason, when such a road is established, why the person at whose instance this was done

might not lock the gates opening into it or fence it up, or otherwise debar the public of any right thereto. Could not the plaintiffs in this case, after having procured the road in question, abandon it at their pleasure? Could they not relinquish it to the defendants without consulting the board of supervisors? If this is so, does it not incontestably establish that it is essentially private? For it must be private if it is of such a nature that the plaintiffs can at their pleasure use or forbid its use, abandon or refuse to abandon it, relinquish or refuse to relinquish it. If the act * * * is valid, might not the plaintiffs, having procured the road, use it for laying down a tram or horse railway and forbid everybody from using the road, and even exclude all persons therefrom? Who could prevent it? These considerations mark the great difference between such a road and a public highway and demonstrate the essential private character of the road."

In the following cases acts substantially like the Iowa act providing for the establishment of private roads, have been declared unconstitutional: *Nesbitt v. Trumbo*, 39 Ill., 110; *Dickey v. Tennison*, 27 Mo., 373; *Clack v. White*, 2 Swan [Tenn.], 540; *Taylor v. Porter*, 4 Hill [N. Y.], 140; *Sadler v. Langham*, 34 Ala., 311; *Newell v. Smith*, 15 Wis., 111.

The language quoted above from the learned judge in reference to the Iowa law is applicable to the statute under investigation. The eminent jurist, commenting on the constitutional provision of the state of Iowa, "that private property shall not be taken for public use without just compensation," continues: "The limitation * * upon the right of eminent domain, or the power of the legislature to take private property for public use, is found in all, or nearly all of the state constitutions. Many of the questions growing out of this limitation upon the otherwise practically if not theoretically absolute power of the legislature to take the property of one for the benefit of the

many, have been settled by adjudication." And he de-
duces from the numerous authorities cited by him in the
opinion the following propositions:

"1. The constitutional limitation above quoted prohibits
by implication the taking of private property for any pri-
vate use whatever without the consent of the owner.

"2. It forbids private property from being compulsorily
taken for any but public use, and then only upon just com-
pensation being made, the amount of which is to be as-
sessed by a jury.

"3. When the public exigencies demand the exercise of
the power of taking private property for the public use
is solely a question for the legislature, upon whose determi-
nation the courts cannot sit in judgment.

"4. That what is such a public use as will justify the
exercise of the power of eminent domain, is a question for
the courts. But 'if a public use be declared by the legisla-
ture, the courts will hold the use public, unless it manifestly
appears by the provisions of the act that they can have no
tendency to advance and promote such public use.'"

We are entirely satisfied with the reasoning and conclu-
sions of this opinion and follow it without hesitation. Stat-
utes similar to the Nebraska law have been held invalid in
the following cases: *Stewart v. Hartman,* 46 Ind., 331;
*In re Albany Street, New York,* 11 Wend. [N. Y.], 149;
*Osborn v. Hart,* 24 Wis., 89; *Crear v. Crossly,* 40 Ill.,
175; *Sholl v. German Coal Co.,* 118 Ill., 427.

Counsel for appellants in their brief cite us to many au-
thorities to sustain the validity of the law assailed as in-
valid in this case. In some of the cases cited the statutes
were held good on the ground that the general public had
a right to use the private roads provided for by the statutes.
Such was the ground of the decision in *Shaver v. Starrett,*
4 O. St., 495, and *Denham v. County Commissioners,* 108
Mass., 202.

In *Sherman v. Buick,* 32 Cal., 242, the court sustained

the constitutionality of a law very similar to our own, but did so by holding that although the statute denominated the road a ' private road,' it was in fact and in law a public road, under the control of the government, and open to every one who might have occasion to use it; and the court declared that "the phrase, ' private road,' is unknown to the common law; all roads are public." The opinion, as counsel say, is ably reasoned; but we do not think this court can say that all roads are public roads in this state. The legislature has said that all public roads shall be sixty-six feet wide, and by the law we are considering it is provided that private roads shall be fifteen feet wide. Evidently, then, the legislature has attempted to recognize two classes of roads. If Marshall and Loder had opened the private road they sought to across Welton's farm, and had been indicted under the criminal statutes for running their horses on a public road of the state, and the proof had shown that the running of their horses was on a private road established under this private road law, can any one doubt that the jury would have been rightly instructed to acquit them?

Counsel for appellants also insist that appellee has an adequate remedy at law by appeal from the order of the board of county commissioners, should it make an order establishing the road, and that therefore this case must be dismissed. The law being invalid, the case of the appellee resolves itself into an appeal, on his part, to a court of equity to enjoin the appellants from committing a threatened trespass. The supreme court of Illinois in *Poyer v. Village of Des Plaines*, 123 Ill., 117, lay down the rule in such case thus: " There are, however, two exceptions, clearly recognized, to the rule that courts of equity will not interfere to restrain trespasses, whether committed under the forms of law or otherwise, which are, first, to prevent irreparable injury; and, second, to prevent a multiplicity of suits. * * * Before a court of equity will interfere to prevent a trespass upon this ground, ' the facts and circumstances

must be alleged from which it may be seen that irreparable mischief will be the result of the act complained of, and that the law can afford the party no adequate remedy.'" In *Watson v. Sutherland*, 5 Wall., 74, the supreme court of the United States say: "The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case must depend altogether upon the character of the case as disclosed in the proceedings." It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. The facts averred in the appellee's petition show that the trespass threatened by the appellants, if committed, would cause appellee an injury, to the redress of which his legal remedy would be inadequate. The decree of the district court is

AFFIRMED.