PAXTON & HERSHEY IRRIGATING CANAL & LAND COM-
PANY, APPELLANT, V. FARMERS & MERCHANTS
IRRIGATION & LAND COMPANY, APPELLEE.

FILED OCTOBER 1, 1895. No. 7724.

1. **Constitutional Law:** TITLES OF BILLS. The provision of
section 11, article 3, of the constitution, viz., "No bill shall con-
tain more than one subject, and the same shall be clearly ex-
pressed in its title," is intended to prevent surreptitious legis-
lation and not to prohibit comprehensive titles.

2. **Irrigation:** EMINENT DOMAIN: STATUTES: CONSTITUTIONAL
LAW. The term "irrigation," as employed in the title of the
act of March 27, 1889, viz., "An act to provide for water rights
and irrigation, and to regulate the right to the use of water for
agricultural and manufacturing purposes," etc., is used in its
popular sense and implies the means of conducting water to the
land to be supplied. The provision therein for the acquiring by
irrigating companies of the right of way for canals and ditches
accordingly *held* to be within said title and not to conflict with
section 11, article 3, of the constitution.

3. **Eminent Domain:** CONSTITUTIONAL LAW: LEGISLATIVE AU-
THORITY: COURTS. To the legislature, and not to the courts,
has been committed the power to determine when the exigen-
cies of the public demand the taking of private property, the
limit of judicial interference being the duty to declare void acts
clearly in conflict with the constitution.

4. ——: ——: ——. There is no arbitrary standard by which
to determine whether the purpose to which property is appro-
priated possesses the element of public utility. Public use, in
a constitutional sense, may be confined to the inhabitants of a
restricted locality or neighborhood, but the use must be com-
mon, and not to a particular individual.

5. ——: RAYNER IRRIGATION LAW. The use of water for the
purpose of irrigating contemplated by the act of March 27, 1889,
known as the "Rayner Irrigation Law," is a public use within
meaning of the constitution.

6. **Irrigation:** RIGHT OF WAY: CONDEMNATION. Section 8 of
article 2, of the "Rayner Irrigation Law" confers upon irrigat-
ing companies organized under the laws of this state power to

acquire the right of way for necessary canals, reservoirs, etc., by condemnation.

7. ———: CONSTRUCTION OF ACT. The word "if" in the first line of the section last above mentioned is evidently an interpolation, having no relation to the body of the section, without sensible meaning, and should accordingly be disregarded in giving effect to the provisions of the act.

8. ——— : ———: LANDS OF CORPORATIONS. The provision of section 3, article 1, of the irrigation law of 1889, viz., "No tract of land shall be crossed by more than one ditch," etc., *held* to include lands owned by corporations as well as natural persons.

9. Statutes: PROVISO: CONSTRUCTION. A proviso which would operate to limit the application of an enacting clause, general in its terms, will be strictly construed, and includes no case not within the letter of the exception.

10. Irrigating Companies: CONNECTION OF DITCHES. The irrigation law of 1889 does not confer upon one irrigating company any right to connect with the ditches of another or take water therefrom without the consent of the proprietor.

11. ———: CONSTRUCTION OF STATUTE: DITCHES. What is meant by the exception contained in section 3, article 1, of the act above mentioned is that no tract of land shall, without the consent of the owner, be burdened with two or more ditches for the watering of the same territory. The question is not whether the first ditch may be so enlarged or extended as to answer the purpose for which the second is designed, but whether it may as constructed be made to supply the lands within reach of both.

APPEAL from the district court of Lincoln county. Heard below before SINCLAIR, J.

The opinion contains a statement of the case.

*Frank T. Ransom* and *T. Fulton Gantt,* for appellant:

The irrigation law of 1889 is unconstitutional in so far as it attempts to confer authority to condemn lands for right of way for canals. The act contains more than one subject. Article 2 treats upon a subject foreign to that mentioned in the title of the act, and is, therefore, in contravention of section 11, article 3, of the state constitution

which provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." (*City of Tecumseh v. Phillips,* 5 Neb., 305; *Messenger v. State,* 25 Neb., 674; *State v. Lancaster County,* 6 Neb., 474; *Holmberg v. Hauck,* 16 Neb., 337 ; *Touzalin v. City of Omaha,* 25 Neb., 817.)

The act is unconstitutional because it attempts to authorize the taking of private property for private use. (State Bill of Rights, sec. 21 ; *Welton v. Dickson,* 38 Neb., 767; *Jenal v. Green Island Draining Co.,* 12 Neb., 163; *Witham v. Osburn,* 4 Ore., 318; *Lorenz v. Jacob,* 63 Cal., 73; Randolph, Eminent Domain, 37.)

Statutes permitting drainage canals to be placed on land for the benefit of an individual proprietor have uniformly been held to be invalid as being for private purposes, unless there' was some provision in the state constitution permitting such statutes. (*Fleming v. Hull,* 73 Ia., 598; *McQuillen v. Hatton,* 42 O. St., 202; *Reeves v. Wood County,* 8 O. St., 333.)

The canals already constructed may be made to answer the purpose for which the defendant's proposed canal is desired and intended, and defendant should be enjoined from crossing the land of plaintiff with an irrigating ditch. (Compiled Statutes, sec. 3, ch. 93*a*; *San Luis Land, Canal & Improvement Co. v. Kenilworth Canal Co.,* 32 Pac. Rep. [Col.], 860.)

*Thomas C. Patterson* and *Grimes & Wilcox, contra:*

So far as the act of 1889 declares irrigation to be a public use, and provides for the condemnation of land for right of way for canals that are projected and built for the purpose of supplying water to the public for irrigation, it clearly comes within the constitutional power of the legislature to legislate for the public welfare. (*In re Bonds, Madera Irrigation District,* 28 Pac. Rep. [Cal.], 272; *Cumming v. Peters,* 56 Cal., 593; *Lux v. Haggin,* 69 Cal., 255;

*Lindsay Irrigation Co. v. Mehrtens*, 97 Cal., 677; *Talbot v. Hudson*, 16 Gray [Mass.], 425; *Oury v. Goodwin*, 26 Pac. Rep. [Ariz.], 376; *Barbier v. Connolly*, 113 U. S., 31; *Head v. Amoskeag Mfg. Co.*, 113 U. S., 16; *Stockton & V. R. Co. v. City of Stockton*, 41 Cal., 147; *Bankhead v. Brown*, 25 Ia., 540; *Pocantico Water-Works Co. v. Bird*, 29 N. E. Rep. [N. Y.], 246; *Omsted v. Proprietors of the Morris Aqueduct*, 46 N. J. Law, 495; *St. Helena Water Co. v. Forbes*, 62 Cal., 182; *Matter of New Rochelle Water Co.*, 46 Hun [N. Y.], 525; *Stamford Water Co. v. Stanley*, 39 Hun [N. Y.], 424; 6 Am. & Eng. Ency. Law, 524; Cooley, Constitutional Limitations [4th ed.], 672.)

The following cases were also cited to sustain the decision of the lower court: *Downing v. Moore*, 20 Pac. Rep. [Col.], 766; *Thomas v. Guiraud*, 6 Col., 530; *Dick v. Caldwell*, 14 Nev., 167; *Simpson v. Williams*, 18 Nev., 432; *Farmers' Independent Ditch Co. v. Agricultural Ditch Co.*, 32 Pac. Rep. [Col.], 724; *Farmers' High Line Canal & Reservoir Co. v. Southworth*, 21 Pac. Rep. [Col.], 1028; *Clifford v. Larrien*, 11 Pac. Rep. [Ariz.], 397; *Wyatt v. Larimer & Weld Irrigation Co.*, 33 Pac. Rep. [Col.], 144; *Cole v. Logan*, 33 Pac. [Ore.], 568; *Knoblauch v. City of Minneapolis*, 57 N. W. Rep. [Minn.], 929; *Barrett v. Kemp*, 59 N. W. Rep. [Ia.], 77; *Cherry v. Matthews*, 36 Pac. Rep. [Ore.], 529; *City of Santa Ana v. Harlin*, 34 Pac. Rep. [Cal.], 225; *Waterloo Water Co. v. Hoxie*, 56 N. W. Rep. [Ia.], 499; *Western Maryland R. Co. v. Patterson*, 37 Md., 125; *Philadelphia, W. & B. R. Co. v. Williams*, 54 Pa. St., 103; *Eidemiller Ice Co. v. Guthrie*, 42 Neb., 238; *Tigard v. Moffitt*, 13 Neb., 565; *Gause v. Perkins*, 3 Jones Eq. [N. Car.], 177.

POST, J.

This is an appeal from a decree of the district court for Lincoln county dismissing the action of the plaintiff company, whereby it seeks to prevent the appropriation by the

defendant of a right of way through its lands for an irrigating canal. In the petition it is, in substance, alleged that the plaintiff company is the owner of 10,000 acres of land, bounded by the North Platte river, in Lincoln county, and also of an irrigating canal known as the "Paxton & Hershey ditch," situated on its said lands and on the lands of other adjoining proprietors; that upon its said land, and nearly parallel with the ditch above mentioned, is an irrigating canal known as the "North Platte Irrigating & Land Company's ditch," and herein referred to as the "North Platte ditch," and that in the vicinity of the plaintiff's lands sought to be watered by the defendant's proposed canal is an irrigating canal known as the "Cody & Dillon ditch." The plaintiff, it is alleged, has constructed a large number of laterals from its said canal, which it is proposed by the defendant company to cross, thus necessitating the construction and maintaining of many bridges, flumes, and conduits, and otherwise needlessly harassing it in the use and enjoyment of its said property. The defendant company, which is organized for the purpose of building and maintaining ditches, canals, aqueducts, and reservoirs for the storage and conveyance of water and of selling water to consumers for irrigating, power, and other useful purposes, prior to the commencement of this action, entered upon the plaintiff's said land, and located and staked out a ditch thereon four and one-half miles in length, and is taking steps to condemn a right of way therefor, but that the three ditches above described afford ample facilities for the irrigation of all of the land sought to be supplied by the defendant company, and that water sufficient to supply the defendant's wants can be furnished from the ditches already constructed, should connection be made therewith, at less expense than by the construction and maintaining of the proposed ditch through the plaintiff's land to the source of supply, the North Platte river. The answer, so far as it is deemed necessary to notice it, consists of an allegation

that the defendant is engaged in the construction of an irrigating canal some twenty miles in length for the purpose of supplying with water from the North Platte river certain territory not within the reach of either of the canals already constructed, a denial that the plaintiff's canal is capable of supplying the lands which the defendant proposes to water, and an allegation that the water supplied by said canal is barely sufficient for the irrigation of the plaintiff's own land. Accompanying the pleadings is a map showing the location of the proposed ditch, as well as those already completed, and which is essential to a perfect understanding of the question at issue. (See page 890.)

The district court, upon entering the decree complained of, submitted the following findings of fact and conclusions of law:

"1. The plaintiff is a corporation organized and existing under and by virtue of the laws of this state for the following purposes: To construct, own, operate, and maintain a canal or canals, ditch or ditches, for irrigation purposes, to purchase, acquire, own, sell, and convey all real estate that may be necessary for such purposes, and to acquire, own, sell, and convey real estate in connection with carrying on an irrigating business, and to acquire, own, sell, and convey real estate for other purposes deemed advisable or advantageous to the corporation and its interest, and to cultivate and improve such lands as shall be owned by the corporation; to furnish, sell or rent water for irrigation of lands which shall be owned by said corporation and within its area and other lands within reach of any canal or canals which shall be owned, operated, or controlled by the corporation owning live stock and raising the same in connection with the land held or controlled by this corporation.

"2. The plaintiff is the owner of about 7,000 acres of land located on and adjacent to the banks of the North Platte river, in Lincoln county, Nebraska, as alleged in its

Paxton & Hershey Irrigating Co. v. Farmers & Merchants Irrigation Co.

SURVEY SHOWING THE LOCATION

OF THE

FARMERS & MERCHANTS IRRIGATION AND LAND COMPANY'S CANAL,

LINCOLN COUNTY, NEB.

petition, and is the owner of an irrigating canal running across its said lands, and the lands of others, for a distance of about ten miles, which canal is finished and constructed for the purposes of irrigating the land under the said ditch, and for the purposes set forth in the articles of incorporation of the plaintiff.

"3. The defendant is a corporation organized under the laws of this state for the following purposes, among others : The building and maintaining of canals, ditches, and aqueducts and reservoirs for the storage and conveyance of water, and the selling of such water to consumers for irrigation, agricultural, power, and other useful purposes.

"4. The plaintiff is the owner of the tract of land proposed to be crossed by the proposed canal of the defendant and which lies under the plaintiff's ditch and which is proposed to be crossed by defendant's ditch for a distance of four miles and a half.

"5. All of the land of the plaintiff across which the defendant proposes to construct its canal, for a distance of four and a half miles, can be irrigated from and by plaintiff's canal, and it is not proposed by the defendant to water or irrigate any of plaintiff's said land within said four miles and a half.

"6. That the defendant corporation is the owner of no land to be watered by its proposed ditch, but that the object of said corporation is for the purpose of constructing and operating a canal or ditch for irrigation purposes for the lands lying contiguous under said ditch for other parties to hire.

"7. That at the points where it is alleged that the defendant's ditch crosses the lands of the plaintiff it is necessary for the defendant to run said ditch across said lands in order to get its water out of the North Platte river, with necessary fall in accordance with the surveyed route of its ditch; that in the territory covered by the ditch of the plaintiff's it is not the object nor the purpose of the

defendant's ditch to irrigate said land, but lands lying below and beyond the territory of the plaintiff's ditch.

"8. There are about 40,000 acres of land between the North and South Platte rivers, and in this territory the evidence shows that the North Platte Ditch Company has a ditch about twenty miles long running through the middle portion of the peninsula formed by the two rivers. The plaintiff's ditch is also constructed in this peninsula and is in length about ten miles. The Cody & Dillon ditch is also in this peninsula and is about six miles in length. A great amount of evidence has been taken to show the capacity of these several ditches for watering the land in the peninsula, including the land proposed to be watered by the defendant's ditch. The location of these several ditches in the peninsula, their dimensions and their capacity, appears from the evidence and the maps introduced in the evidence, but the court does not find nor pass upon the evidence relating to the question as to whether or not this water could be supplied by the defendant's constructing their ditch up and to the plaintiff's ditch and receiving water therefrom, for the reason there is no provision in the act contemplating it is obligatory upon the defendant to so do.

"9. The court further finds that the defendant's proposed ditch will cross the lands of the plaintiff through which plaintiff's ditch has already been built which lands are also irrigated from plaintiff's ditch.

"10. The court further finds that the plaintiff has not given its written consent to cross the lands owned by it proposed to be crossed by the defendant with its said proposed canal and objects to its appropriation of its lands for the purpose of constructing the defendant's said ditch over the same.

"CONCLUSIONS OF LAW.

"First—That section 2034 [sec. 3, art. 1, irrigation law of 1889] is not applicable to the facts in this case, for the reason that the defendant's contemplated ditch is not being

constructed for the purpose of irrigating the lands crossed by the plaintiff's ditch, nor the lands lying under the plaintiff's ditch, but for the purpose of irrigating lands beyond and below the plaintiff's ditch.

"Second—That the defendant is entitled to cross the lands of the plaintiff for the purpose of constructing its said ditch on complying with the necessary requirements of law for said purpose."

It will be observed from the foregoing statement and opinion that the defendant's claim to a right of way for its canal through the plaintiff's land is founded upon the provisions of the act of March 27, 1889, known as the "Rayner Irrigation Law," entitled "An act to provide for water rights and irrigation, and to regulate the right to the use of water for agricultural and manufacturing purposes, and to repeal sections one hundred and fifty-eight (158) and one hundred and fifty-nine (159) of chapter 16 of the Compiled Statutes of 1887, entitled 'Corporations.'"

The first contention on this appeal is that the provision for the acquiring by corporations of the right of way for irrigating ditches in the exercise of the power of eminent domain is foreign to the title of the act mentioned, and accordingly violative of section 11, article 3, of the constitution, viz., "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." The object of the foregoing provision has been declared not to prohibit comprehensive titles, but to prevent surreptitious legislation, by advising representatives of the nature and purpose of the measures they are called upon to support or oppose. (*Kansas City & O. R. Co. v. Frey*, 30 Neb., 790; *In re White*, 33 Neb., 813; *Trumble v. Trumble*, 37 Neb., 340; *City of South Omaha v. Taxpayers' League*, 42 Neb., 671.) It is said in White's case, *supra*, that the legislature has the right to choose the title to any act passed by it, and although that chosen may not be the most appropriate the act will not be held void unless clearly in conflict

with the constitution. When tested by that rule we cannot doubt that the provision assailed is germane to the title of the act, and within the evident purpose thereof, viz., the utilizing of the public waters in the further development of the agricultural resources of the state. The word "irrigation," as employed in the title of the act under consideration, is apparently used in its popular sense, and denotes the application of water to land for the production of crops. (*Platte Water Co. v. Northern Colorado Irrigation Co.*, 12 Col., 525.) The use of water for the purpose of irrigation clearly implies the means of conducting it to the land to which it is applied, and any plan such as contemplated by the act of 1889 which omits provision for the enforced access by the public to the source of supply is necessarily partial and ineffective.

2. The act, in so far as it makes provision for the acquiring of the right of way for irrigating canals by condemnation, is also vigorously assailed on the ground that it contemplates the taking of property for private use only, and therefore in conflict with section 21 of the Bill of Rights, viz., "The property of no person shall be taken or damaged for public use without just compensation therefor." This provision has been held to prohibit, by implication, the taking of private property for private use of any character whatever without the consent of the owner. (*Jenal v. Green Island Draining Co.*, 12 Neb., 163 ; *Welton v. Dickson*, 38 Neb., 767.) In the last mentioned case it was held, following *Coster v. Tide Water Co.*, 18 N. J. Eq., 54, that the want of power in the legislature to transfer to one person the property of another does not necessarily depend upon constitutional restrictions, but upon the fact that such authority is in no sense an incident to the powers conferred upon the law-making branch of the government. We are thus for the first time confronted with the question whether the use contemplated by the statute is a public one in a constitutional sense, or whether it is a mere

private use and accordingly within the prohibition men-
tioned. In this connection it should be observed that to
the legislature, and not to the courts, has been committed
the power to determine when the exigencies of the public de-
mand the taking of property for public uses, the limit of ju-
dicial interference being the duty to declare void acts clearly
violative of the fundamental law of the state. There is no
arbitrary standard by which to determine whether the pur-
pose to which property is appropriated possesses the ele-
ments of public utility. It has been said by an eminent
jurist: "The public use required, need not be the use or
benefit of the whole public or state, or any large portion of
it. It may be for the inhabitants of a small or restricted
locality, but the use and benefit must be in common, and
not to particular individuals or estates." (See Chancellor
Zabriskie in *Coster v. Tide Water Co., supra.*) Again, it has
been said that "the use is public when it promotes the in-
terests of a considerable portion of the community, although
it may not benefit the community at large." (Kinney, Irri-
gation, sec. 94. See, also, Black's Pomeroy, Water Rights,
174; *Lux v. Haggin,* 69 Cal., 304; *Oury v. Goodwin,* 26
Pac. Rep. [Ariz.], 376; *Umatilla Irrigation Co. v. Barn-
hart,* 30 Pac. Rep. [Ore.], 37; *Foster v. Park Commission-
ers,* 133 Mass., 321; *Hagar v. Reclamation District,* 111
U. S., 701; *Wurts v. Hoagland,* 114 U. S., 606; *Pocantico
Water-Works Co. v. Bird,* 130 N. Y., 249.) In the last
mentioned case we observe the following pertinent lan-
guage: "The term 'public use,' as used in connection with
the right of eminent domain, is not easily defined.  *  *  *
It is doubtless true that in order to make the use public a
duty must devolve upon the persons or corporation holding
the property to furnish the public with the use intended.
The term implies 'the use of many,' or 'by the public,'
but it may be limited to the inhabitants of a small or re-
stricted locality, but the use must be in common and not for
a particular individual." It has been said that if by any

reasonable construction a designated use may be held to be public in a constitutional sense, the will of the legislature should prevail over any mere doubt of the court (*Blank-head v. Brown*, 25 Ia., 540; *In re Bonds, Madera Irrigation District*, 92 Cal., 309; *Coster v. Tide Water Co., supra*), which, however, is but the application of a fundamental principle of our system, viz., the independence of each department of the government within its own domain. It should be remembered, too, that the essential features of the "Rayner Irrigation Law" appear in the legislation of the several Pacific states, notably of California, whose constitutional provisions on the subject do not differ substantially from ours, and where it had, long previous to its adoption by us, received a definite construction adverse to the contention of the plaintiff herein. (See *Lux v. Haggin, supra*.) The legislature must, therefore, have intended to adopt not the statute alone, but the construction placed upon it in the state of California. Such is the well established rule. (*Bohanan v. State*, 18 Neb., 57.) But any examination of this subject is necessarily incomplete which omits mention of the recent case of *Bradley v. Fallbrook Irrigation District*, 68 Fed. Rep., 948, holding that assessments under the provisions of the district irrigation law of that state contemplate the taking of property for mere private purposes and accordingly within the prohibition of the United States constitution. It is unnecessary, however, at this time to examine the reasoning upon which that case rests, since it is therein declared inapplicable to the ordinary use of water for irrigating purposes in the arid region of California, and therefore in harmony with *Lux v. Haggin* and later cases in which the same doctrine is asserted by that court. The varying conditions of society are constantly presenting new subjects of public utility, which is but another name for public necessity, hence the force of Chancellor Vroom's remark in *Scudder v. Trenton Delaware Falls Co.*, 1 N. J. Eq., 694, that what shall be deemed a

public use depends somewhat on the situation and wants of the community for the time being. Nor were the conditions surrounding the people of the Pacific states, when the foundation was laid for the body of their laws upon the subject, materially different from those which to-day confront the western half of our own state. We behold what was but yesterday the public domain, occupied to the western limit of the rain belt, so called, and settlers eagerly seeking for homes in the semi-arid region beyond. We behold thousands of acres of fertile land in the valleys of the Platte, the Loups, the Elkhorn, and the Republican rivers, practically worthless under existing conditions for the purpose of agriculture, but which by application of the waters of those streams may be made most productive, thus not only supporting the rapidly increasing population of that region, but adding largely to the wealth and material prosperity of the state. That an undertaking so important can be successfully prosecuted alone through the agency of the state none can doubt. The reclamation of a region so vast, equal in extent to more than one state of the Union, is surely a legitimate function of government. And the exercise of the reserve power of the state in the promotion of an enterprise so beneficial is not even in a technical sense violative of the restrictive features of the constitution.

3. It is next argued that authority to appropriate land for right of way purposes is by the law of 1889 conferred upon property owners only, and it being admitted that the defendant company is not the owner of any of the lands lying under its ditch, is not within the provisions of the act. The purpose of sections 1, 2, 3, and 4 of article 2, to which we are referred in support of that contention, was apparently, to confer upon individuals and corporations the right of way in certain cases through the premises of adjoining proprietors. It is, however, unnecessary to examine the provisions mentioned, since the plaintiff's argument is based upon an apparent misconception of the defendant's claim,

61

which is under the provisions of sections 8 and 9 of article 2, viz.:

"Sec. 8. If any corporation organized under the laws of this state for the purpose of constructing and operating canals for irrigating or water power purposes, or both, may acquire a right of way over or upon any land for the necessary construction of such canal, including dams, reservoirs, and all necessary adjuncts to said canals, in the same manner as provided for persons and companies in this act, and such persons, canal companies, and corporations shall have the same power to occupy state lands with their said canals as is given to railroad corporations by section 105, chapter 16, of the Compiled Statutes of 1887 ; and such corporations shall also have power to borrow money and to mortgage all their property and franchises in the same manner and for the same purposes as railroad companies.  *  *  *

"Sec. 9. Canals constructed for irrigating or water power purposes, or both, are hereby declared to be works of internal improvement, and all laws applicable to works of internal improvement are hereby declared to be applicable to such canals."

The first word of section 8, as it appears above, is evidently an interpolation, having no relation to the body of the section, without sensible meaning, and should accordingly be disregarded in giving effect to the provisions of the act. (*Stone v. Yeovil*, 1 C. P. Div. [Eng.], 701; *United States v. Stern*, 5 Blatch. [U. S.], 512; *State v. Beasley*, 5 Mo., 91; *State v. Acuff*, 6 Mo., 55.)   A careful reading of the two sections last named with the word "if" eliminated from section 8 leaves no room to doubt that the defendant company is within the terms of the act, and that the plaintiff's claim to the contrary is without merit.

4. It is by the plaintiff further argued that it is within the exception contained in section 3, article 1, as follows: "No tract of land shall be crossed by more than one ditch, canal, or lateral without the written consent and agreement

of the owner thereof, if the first ditch, canal, or lateral can be made to answer the purpose for which the second is desired or intended." The evidence relating to this branch of the case is quite voluminous, although the district court, as appears from its findings and conclusions of law, held the foregoing exception not applicable to the facts without determining the question of the capacity of the ditch as already constructed. On behalf of the defendant it is contended, in effect, that the exception of the statute applies to owners and proprietors other than irrigating companies, which corporations, it is argued are not in terms or by implication included therein. The case of *San Luis Land, Canal & Improvement Co. v. Kenilworth Canal Co.*, 32 Pac. Rep. [Col. App.], 860, it is conceded, tends to sustain that contention. Referring to the Colorado statute which provides that no tract or parcel of improved or occupied land shall be burdened with two or more ditches, etc., it is said in the case cited: "We are wholly unable to understand how it can be urged that the defendant company has any right under the provisions of these sections. They clearly, and in unmistakable language, apply to the right of the owner of the lands to assert that his property shall not be burdened with more than one irrigating ditch, provided that one ditch be of sufficient capacity to carry water for the purposes contemplated by the act." We are, however, unable to accept that case as an authoritative interpretation of our statute. The term "no tract of land," as employed, without qualifications, must be held to include the property of corporations as well as natural persons; and such would have been the construction had the statute read, "the land of no person shall be crossed," etc. (*Wales v. City of Muscatine*, 4 Ia., 302; *Ricker v. American Loan & Trust Co.*, 140 Mass., 346; *Norris v. State*, 25 O. St., 217.) But we reach the same conclusion as the district court—presumably by the same course of reasoning—by which the sections are transposed, section 8 of article 2 being regarded

as the enacting clause and section 3 of article 1 as a proviso exempting the exceptional cases therein contemplated from the operation of the act. According to settled rules of construction a proviso which would operate to limit the application of an enacting clause, general in its terms, will be strictly construed, and includes no case not within the letter of the exception. (Endlich, Interpretation of Statutes, sec. 186; *United States v. Dickson*, 15 Pet. [U. S.], 141; *Roberts v. Yarboro*, 41 Tex., 449; *Epps v. Epps*, 17 Ill. App., 196.) Referring again to the proviso involved, we are first impressed with the fact that the primary object thereof is the protection of land owners rather than the proprietors of irrigating ditches. True, both characters may, as in this instance, be united in one person or corporation, but such cases are exceptions and apparently not within the contemplation of the legislature. It is in the second place noticeable that the act is silent respecting the terms and conditions upon which one irrigating company may make use of the canal or ditch of another. Nor is the proprietor of such a ditch in terms required to supply water upon any terms to a rival corporation. It was at the consultation suggested that it is within the power of a court of equity to prescribe the conditions upon which one irrigating company may connect with the ditch of another; but that assertion rests, to say the least, upon doubtful grounds. Conceding irrigating companies as *quasi*-public corporations, to be subject to the strict obligations of common carriers, it does not follow that they may by the courts be compelled to enter into particular agreements or assume particular relations, however just and equitable, toward each other. That subject has recently engaged the attention of the supreme court of the United States, by which the power to prescribe terms for the interchange of business by connecting carriers is declared to be legislative rather than judicial in character, notwithstanding the provisions of the interstate commerce act. (*Atchison, T. & S. F. R. Co. v.*

*Denver & N. O. R. Co.*, 110 U. S., 667; *Pullman Palace Car Co. v. Missouri P. R. Co.*, 115 U. S., 587; *Express Cases*, 117 U. S., 1; *Little Rock & M. R. Co. v. St. Louis, I. M. & S. R. Co.*, 41 Fed. Rep., 559. See, also, Beach, Private Corporations, 839; *Kentucky & Indiana Bridge Co. v. Louisville & N. R. Co.*, 37 Fed. Rep., 567; *Shelbyville R. Co. v. Louisville & N. R. Co.*, 82 Ky., 541.) The precise limits within which courts of equity will interfere in such cases, in order to regulate or enforce the reciprocal obligations of corporations, is a question foreign to the present controversy, although the authorities cited serve to illustrate the difficulties attending the interpretation placed upon the statute by counsel for plaintiff. We are, after a careful analysis of the language of the exception, unable to say that it contemplates the connecting of different canals or that it imposes upon one irrigating company any duty to supply water for use by the patrons of another. What the statute implies is that no tract of land shall, without the consent of the owner, be burdened with two or more ditches for the watering of the same territory. The question is not whether the first ditch may be so enlarged or extended as to answer the purpose for which the second is designed, but whether it may, as constructed, be made to supply the lands within reach of both. That the purpose of the defendant is to water lands which cannot be accommodated by the plaintiff, but which, in the language of the district court, "lie below and beyond its ditch," as now constructed, is clearly established by the proofs and apparent from an inspection of the foregoing map. Nor can the fact that the plaintiff concedes the defendant's right to connect with its ditch and offers to supply the latter with water on terms confessedly reasonable be regarded as material, since, as we have seen, the law imposes upon the plaintiff no such duty. It follows, without further elaboration, that the decree of the district court is right and must be

AFFIRMED.